[L. A. No. 1302.    Department One.—January 25, 1905.]

## SOUTHERN CALIFORNIA RAILWAY COMPANY, Respondent, v. W. H. WORKMAN, City Treasurer, etc., and E. R. FOX, Appellants.

STREET ASSESSMENT—RAILROAD RIGHT OF WAY ABUTTING ON STREET—INJUNCTION—IMMATERIAL QUESTION AS TO ASSESSMENT OF FEE.—A part of the right of way of a railroad company abutting upon a public street in a city is not liable for a street assessment for street improvements fronting thereon, and the railroad company may enjoin the sale thereof for non-payment of such assessments. The question whether a valid and effective assessment may be made to the owner of the fee, subject to the easement of the railroad right of way, is immaterial in such injunction suit, and will not be decided. The injunction is not injurious to a sale of the subordinate fee.

ID.—RAILROAD COMPANY A QUASI-PUBLIC CORPORATION—STATE FRANCHISE—EXEMPTION FROM SALE.—A railroad company is a quasi-public corporation, in whose railroad the public is interested. It

holds a franchise from the state, and its right of way cannot be sold on execution or for a street assessment.

Id.—Appeal from Judgment and from Temporary Injunction—Order Merged in Judgment—Dismissal.—An order granting a temporary injunction is merged in the judgment making the injunction perpetual, and upon an appeal from both, where the judgment is affirmed, the appeal from the order will be dismissed.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order granting a temporary injunction. N. P. Conrey, Judge.

The facts are stated in the opinion.

Cole & Cole, for Appellants.

The assessment was valid under the terms of the Vrooman Act. The fee in the land was assessed, and might be sold to satisfy it. (*Diggins v. Hartshorne,* 108 Cal. 154; *Chicago etc. Ry. Co. v. City of Ottumwa,* 112 Iowa, 300.) The injunction enjoins the sale of any part of the land described by metes and bounds, and includes not only the right of way, but also the ownership of the fee. The assesssment against the unknown owner was valid, and the injunction is erroneous.

C. N. Sterry, for Respondent.

The right of way, however acquired or held, was a public franchise, which cannot be sold on execution. (*Gue v. Tide Water Canal Co.,* 24 How. 257; *East Alabama Ry. Co. v. Doe,* 114 U. S. 350; *Hammock v. Loan and Trust Co.,* 105 U. S. 90; *Buncombe County Commrs. v. Tommey,* 115 U. S. 122; *Plymouth R. R. Co. v. Colwell,* 39 Pa. St. 337;[1] *Foster v. Fowler,* 60 Pa. St. 27; *Youngman v. Elmira etc. R. R. Co.,* 65 Pa. St. 278; *Hatcher v. Toledo etc. Co.,* 62 Ill. 481; *Dunn v. North Missouri R. R. Co.,* 24 Mo. 493; *Tyler Top R. R. Co. v. Driscol,* 52 Tex. 13; *Overton Bridge Co. v. Means,* 33 Neb. 857;[2] *Gooch v. McGee,* 83 N. C. 59; *Louisville etc. Ry. Co. v. Bonney,* 117 Ind. 501.) A part of the right of way cannot be sold for street assessments or any purpose of assessment for taxation. (*Chicago etc. Ry. Co. v. City of Milwaukee,* 89 Wis. 506; *Yellow River Imp. Co. v. Wood County,* 81 Wis. 559, 562; *Oshkosh City Ry. Co. v. Winnebago County,*

---

[1] 80 Am. Dec. 526.         [2] 29 Am. St. Rep. 514.

CXLVI. Cal.—6

89 Wis. 435; *State* v. *Anderson,* 90 Wis. 550; 1 Desty on Taxation, 397; *People* v. *Gilon,* 126 N. Y. 147; *Louisville etc. R. R. Co.* v. *State,* 122 Ind. 443; *New York etc. R. R. Co.* v. *Morrisania Trustees,* 7 Hun, 652; *Northampton County* v. *Lehigh Coal etc. Co.,* 75 Pa. St. 461; *Sweaney* v. *Kansas City etc. Ry. Co.,* 54 Mo. App. 265; *Detroit etc. Ry. Co.* v. *City of Grand Rapids,* 106 Mich. 13.[1])

COOPER, C.—Action to enjoin a sale of a portion of plaintiff's right of way. A temporary injunction was granted, which by the judgment was made perpetual. This appeal is from the order granting the injunction and from the judgment.

The plaintiff is a railroad corporation operating a railroad about four hundred and eighty-seven miles in length in and through five counties in the southern part of the state. A portion of its main line, running from Los Angeles to Barstow, is located and operated in Los Angeles County, and 1,012 feet of the right of way of this line abuts on Pasadena Avenue in the city of Los Angeles. The city proceeded to make certain improvements on Pasadena Avenue under the provisions of the statutes authorizing the making of such improvements and the charging of the costs to abutting property. By the proceedings of the city council, the cost of the improvements was to be assessed upon abutting property upon the front-foot method provided by statute. An assessment for the purposes of said improvement was attempted to be made upon a small portion of plaintiff's right of way, consisting of an irregular strip about nine thousand five hundred feet in length and from sixty to one hundred feet in width, which attempted assessment described the property as follows: "Commencing at N. W. intersecting point of Avenue 33 and the right of way of the Southern California Railway Company, thence meandering in a northerly direction 9635 min. to Avenue 50, thence along the S. line of Avenue 50 62 min., thence meandering in a southerly direction 9566 min. to Avenue 33, thence W. 60 along the N. line of Avenue 33 to beginning. Being the Southern California Railway right of way between Avenues 33 and 50."

Plaintiff refused to pay the amount of the attempted assess-

---

[1] 58 Am. St. Rep. 466.

ment, and a bond was issued by the city and sold to appellant Fox. The bond described the property assessed the same as in the above description in the assessment, except the words "Being the Southern California Railway right of way between Avenues 33 and 50" were omitted, and instead thereof the words "Owner is the Southern California Railway Company, a corporation," were added. The notice of sale described the property as it is described in the bond. Plaintiff commenced this action to enjoin the sale, and, after setting forth the facts, alleged in its complaint "that unless restrained from so doing, the said defendant W. H. Workman, as such city treasurer, at the request of the defendant Fox, will, on Tuesday the 14th day of January, 1902, proceed, under said advertisement and notice of sale, to sell, or attempt to sell, that portion of the right of way of the plaintiff herein above described, and upon which it is operating a railroad, as aforesaid, in accordance with said notice, for the purpose of satisfying said bond."

The complaint further alleged that the threatened sale would cause it great and irreparable injury and "create a cloud upon the title of the plaintiff to said portion of said right of way, and to its right to use and occupy the same as and for its business of a common carrier of passengers and freight."

The defendants filed a general demurrer to the complaint, which was overruled, and they declined to answer.

We are of opinion that the complaint states facts sufficient to constitute a cause of action. It states that the assessment was "upon that portion of the plaintiff's right of way herein described." The assessment concludes with the words of identification—"Being the Southern California Railway right of way between Avenues 33 and 50." It was evidently the intention to assess and sell the right of way as described by metes and bounds in the assessment.

The statute in regard to assessments for the improvement of streets provides for an assessment upon the lots and lands fronting on the improved portion of the street. (Vrooman Act, sec. 7.)

There is no authority for making an assessment upon a right of way or for selling the same. A railroad company is a quasi-public corporation in which the public is interested. It holds

a franchise from the state and must operate its road or forfeit its franchise. A part of its right of way cannot be sold on execution or for a street assessment. The decisions are not in harmony on the question, but we think the best-considered cases hold that such right of way cannot be sold to satisfy a street assessment. In *Chicago etc. Ry. Co.* v. *City of Milwaukee,* 89 Wis. 509, the question is ably discussed, and the court said: "Whether the track and right of way of a railroad company is subject to assessment for local improvements on the ground of special benefits, under the language of statutes couched in general terms providing for such assessments, is a question upon which the courts have not been agreed. The system and policy of each state enter largely into the question, and give to it a local character. By the charter of Milwaukee, the improvement of Commerce Street was chargeable to and payable by the lots fronting or abutting upon such street . . . to the amount which such improvement shall be adjudged by the board of public works to benefit such lots; and an assessment of the amount is provided for which, when confirmed by the council, its collection may be enforced in case of non-payment by a sale and conveyance of the lots so assessed. (City Charter, Laws 1874, c. 184, subsec. 7, pars. 3, 7.) So much of the lots in question as were occupied by the tracks of the railroad and supporting banks, and used for right of way purposes, had been devoted and dedicated to uses in which the public had an important interest of a probable perpetual duration; and to enforce an assessment against such right of way and track, extending about half a mile in distance, by a sale and conveyance, would necessarily dismember and break up the entirety and utility of the road as a line of travel and commercial intercourse, and interfere with and impair the paramount interests which the public have in it for these purposes. The property of the corporation in its road and appurtenances essential to its operation and use, annexed to the franchise of the company to maintain and operate its road, is an entirety, and is thus charged, in the hands of the company, with an important trust in favor of the public, though the property in all other respects is essentially private, and operated for private gain. Public policy would seem to forbid a severance and segregation of its several special or particular parts, essential to the

exercise of the franchises and the use and operation of the road, in forced sale upon legal process, or for an assessment.''

In *Louisville etc. R. R. Co.* v. *Bonney*, 117 Ind. 501, the court said: ''The other feature of the case presents a question of much greater difficulty. According to the established rule of the common law, which controls the current of modern authority, the franchises of a corporation—mere incorporeal hereditaments—were not subject to seizure and sale upon execution, in the absence of express statutory provisions authorizing the sale and prescribing the method of transfer. It follows as a natural sequence that lands, easements, or things essential to the existence of the corporation and the execution of its corporate duty, and without which its franchise would be of no practical use, cannot be levied upon and sold on execution at law, so as to detach them from the franchise, and thus destroy its use.''

The court of appeals of Missouri in *Sweaney* v. *Kansas City etc. Ry. Co.*, 54 Mo. App. 266, said: ''The sole question is this: Does the law authorize the enforcement of a special tax bill for a street improvement against a detached right of way? . . . The tax bills in suit were issued on the theory that the land along the line of the graded street, and used by a railroad as its right of way, is chargeable with such local improvements just as other adjacent property. This, too, is the position taken, and so forcibly urged on us by plaintiff's counsel. But however cogent the argument, and however reasonable and just may be the position contended for, yet under the repeated decisions of our  supreme court, in cases which we deem analogous, we must hold that plaintiff cannot maintain this suit—which has for its aim and purpose the carving out, sale, and conveyance of a portion only of defendant's right of way. Admitting the terms 'adjoining lands,' 'all the property on both sides,' etc., appearing in the Kansas City charter, to be sufficiently general to embrace the railroad right of way, but even then we are met with the doctrine of our adjudicated cases that a lien will not be enforced against a mere fractional part of a railroad right of way, except it be specially authorized by the legislature in language not to be doubted.'' (See *City of Philadelphia* v. *Philadelphia etc. R. R. Co.*, 33 Pa. St. 41; *City of Allegheny* v. *Western Pacific R. R. Co.*, 138 Pa. St. 375; *Bridgeport* v. *New York etc. R. R.*

*Co.,* 36 Conn. 255;[1] *Detroit etc. Ry. Co.* v. *City of Grand Rapids,* 106 Mich. 13.[2])

It is not necessary to decide in this case as to whether or not the fee or reversion in the land can be assessed. After a right of way has been acquired by a railroad corporation by condemnation or otherwise, and its track laid upon it, we apprehend that it would be difficult to realize by a sale of the fee remaining in the grantor. But, without deciding this question, it is sufficient to say that this proceeding is for the purpose of enjoining a sale of plaintiff's right of way,—that is to say, its easement. The judgment is, that the bond is void as a lien upon plaintiff's right of way, and that defendant be enjoined from selling ''any part or portion of plaintiff's right of way, in said complaint, and hereinafter described.''

If the defendants do not intend to sell the plaintiff's easement, but only the subordinate estate, the judgment is not in any way injurious to them. The restraining order is merged in the judgment and the appeal therefrom may be dismissed.

We therefore advise that the judgment be affirmed and the appeal from the order dismissed.

Harrison, C., and Smith, C., concurred.

For the reasons given in the foregoing opinion the judgment is affirmed and the appeal from the order dismissed.

Van Dyke, J., Shaw, J., Angellotti, J.

Hearing in Bank denied.

Beatty, C. J., dissented from the order denying a rehearing, and filed the following opinion on the 8th of April, 1905:

BEATTY, C. J., dissenting.—I dissent from the order denying a rehearing of this cause by the court in Bank. The principal question presented by the two appeals is new and important, and I think has been decided without sufficient consideration of the consequences involved in the precedent we are making, and without any consideration of a proposition the correct determination of which is absolutely essential to a just conclusion upon the matters in controversy.

[1] 4 Am. Rep. 63.    [2] 58 Am. St. Rep. 466.

The statement of the case in the Department opinion is in some respects inaccurate and obscures the real question to be decided. The appeal from the judgment and the appeal from the order each rests upon its own separate record. The case on the appeal from the judgment is presented by the complaint and the default decree. The case on the appeal from the order granting a temporary injunction is presented by the complaint, the bill of exceptions, setting forth the evidence introduced at the hearing of the motion, and the order. The record on this latter appeal shows fully and clearly the actual state of facts out of which the controversy arises. The record on the appeal from the judgment shows only the facts alleged in the complaint and admitted by the demurrer. The assessment of the so-called "right of way" is not set out in the complaint, but does appear in full in the bill of exceptions constituting a part of the record on the appeal from the order. The opinion of the court, however, which deals exclusively with the appeal from the judgment, quotes a portion of the assessment ("Being the Southern California Railway right of way," etc.), in order to show (if that is what the opinion means) that it was evidently the intention to assess the mere easement of the right of way. If, instead of the language so quoted, the whole assessment had been set out as it appears in the bill of exceptions, it would be seen that there was no attempt to assess an easement as such, but simply an assessment to unknown owners of a tract of land described rather indefinitely by boundary-lines, but identified by the additional term of description: "Being the Southern California Railway right of way between Avenues 33 and 50." It may be true that this and the other evidence contained in the bill of exceptions will serve as an aid to interpretation in dealing with ambiguous phrases used in the complaint, but for this purpose the whole must be taken, and not a part—and considering the whole evidence together in connection with the argument of plaintiff's counsel as contained in the briefs, it is very evident that the phrase "right of way" in plaintiff's mouth means not a mere easement of one person in the lands of another, but the strip of land over which the line extends, whether owned by the railway company or by another. It is in this untechnical sense that the expression is used by the assistant engineer of the plaintiff in his affidavit constituting

the principal evidence offered by plaintiff on the hearing of the motion. He deposes that the plaintiff acquired different portions of its "right of way" by various bargain and sale and quitclaim deeds, and as to that portion of the so-called right of way with which we are particularly concerned,—the portion, that is to say, about one thousand feet in length, which actually abuts upon Pasadena Avenue,—he sets out the description of the property so conveyed as follows: "Being a strip of land thirty feet wide on each side of the center line of the railroad track of the California Central Railway," etc. "Also a strip of land on the westerly side of the foregoing described strip and adjoining the same forty feet wide and 900 feet long, being four hundred and fifty feet north and the same distance south from the center line of Morgan Station as now located. Also" (other adjacent strips similarly described). In short, the evidence plainly shows that what the plaintiff calls its "right of way" is really and truly a strip of land, sixty feet in width for the most part, along the center line of which its track extends, and which it owns in fee. For about one thousand feet where it abuts on Pasadena Avenue this strip is extended back forty feet farther to accommodate a railway station, and the whole strip one hundred feet in width is likewise owned by the plaintiff in full property. It has no easement, it owns the soil, but calls it nevertheless its "right of way."

The assessor in his effort to make his description of the tract assessed definite and certain, merely used the expression "right of way," in the sense in which the plaintiff's witnesses use it—the sense in which it is often used in the records and briefs that come to this court, and the sense in which we can take judicial notice it is commonly employed by railroad men. (See *Southern Pacific Co.* v. *Burr*, 86 Cal. 279.) Looking to the assessment itself as it apears in the bill of exceptions, no other possible construction can be placed upon it than that of an assessment of a tract of land, and all the other evidence tends only to strengthen this view. It is also clear that the plaintiff was the owner in full property of all that portion of the tract abutting on Pasadena Avenue. The question, therefore, which is really presented on the actual facts of the case is whether a lot of land abutting on a public street ceases to be assessable as such for its proportion per front foot of the

cost of grading, etc., when acquired and used by a railroad company for laying its track and operating its trains. But the question to be determined on the appeal from the judgment depends not on the facts as proved at the hearing of the motion, but on the facts alleged in the complaint and confessed by the demurrer, and it is necessary to consider whether there is any material difference between the facts alleged and the real facts. I do not think that there is. It is alleged that there was an attempt to assess the right of way, but what the assessor actually did is not alleged specifically, and the assessment as it appears of record is not set forth. The allegation is rather of a conclusion of law than a matter of fact, and, construed with reference to other allegations, evidently means no more than what is in fact true that he assessed the strip of land which plaintiff calls its right of way. It is alleged, for instance, that the holder of the land demanded of the defendant Workman that he should sell the right of way to satisfy the bond, and thereupon defendant published the notice, a copy of which is incorporated in the complaint, and that unless restrained defendant will under said advertisement and notice attempt to sell the right of way, etc. Looking to the notice itself, we find that it says nothing about selling a right of way, but merely announces the sale of a tract of land. In short, when the phrase "right of way" is construed in the sense in which plaintiff uses it in the complaint itself, it can be seen that nothing inconsistent with the truth is alleged, and so the question is the same in both appeals, Does a lot of land abutting upon a public street become unassessable for street improvements when acquired and used by a railroad company for laying its track and operating its trains? In effect, the opinion of the court holds that it does become exempt from the burden which the law imposes upon all other property similarly situated. For although the decision only declares in terms that there is no authority for making an assessment upon a right of way, it means, when construed with reference to the facts of the case, that you cannot assess or sell a tract of land belonging to a railroad company if its track extends over it without expressly exempting the right of way; that is to say, without reserving to the company in the express terms of the sale the exclusive right to use the land for all the purposes of its traffic. The

proposition broadly laid down is, that a part of a railroad company's right of way cannot be sold on execution or for a street assessment. Of course it is consistent and logical to say that such property cannot be assessed if it cannot be sold, for there is no possible way of enforcing a delinquent assessment for street improvements except by a sale of the abutting lots, and an assessment which binds no one is equivalent to no assessment at all.

But I dispute the proposition that a right of way cannot be sold on execution or for a street assessment. As to executions, the unsoundness of the proposition is easily demonstrated by a simple example: Suppose a tract of land subject to a judgment or mortgage lien to be sold by the mortgagor or judgment debtor to a railroad company and crossed by its track; or suppose, instead of a sale of the land, a grant of the mere easement of the right to lay and operate the track. Can it be pretended that the judgment creditor or mortgagee would not have the right to sell the land on execution freed of the servitude if necessary to satisfy the lien? I imagine his right to make the sale will scarcely be denied, and yet all the direful consequences to the public and the company— stoppage of traffic, forfeiture of franchise, etc.—would follow just as surely (or rather they would be just as surely avoided by a satisfaction of the debt and discharge of the lien) upon such a sale as upon a sale for a delinquent street assessment. For this reason I say the opinion is here again perfectly logical and consistent in putting sales upon execution and sales to satisfy delinquent assessments upon the same footing; all the reasons advanced against the right to make such sales have the same application to one as to the other. I go further and say that all the reasons in favor of the right to sell on execution in the case supposed apply with equal force in favor of the right to sell in satisfaction of a delinquent street assessment. By the general laws of the state an equal burden is imposed upon all abutting lots in proportion to frontage for the purpose of improving the street. The front-foot rule being the basis of apportionment, the law would be unconstitutional if it did not have a uniform application, and an assessment upon a part only of the frontage to pay for any particular improvement would be void. Neither the legislature by statute nor the assessor by his assessment

can by exempting a portion of the frontage impose an excessive burden upon the balance. (*People* v. *Lynch,* 51 Cal. 15.[1]) And what cannot be done directly cannot be done indirectly. The legislature could not, if it would, exempt a lot owned or used by a railway company from its liability to contribute equally with other lots similarly situated to the expense of street improvements. But there has been no attempt to confer any such exemption by the legislature. By the law, all abutting property is subjected to a uniform charge in proportion to frontage, and when an improvement is made the lien, till then merely potential, becomes fixed and definite, and there is no more reason why the property should not be sold in satisfaction of such a lien than there is for saying it could not be sold to satisfy the lien of a judgment or mortgage in the case above supposed.

The serious consequence to flow from this decision is, that hereafter when any part of the lots fronting on a public street is used by a railway company for its track, the street must remain unimproved, for the assessment cannot include the whole frontage, and if it does not it will be void, according to the decision in *People* v. *Lynch,* 51 Cal. 15,[1] and the cases in which that decision has been followed and affirmed.