[Civ. No. 5561. First Appellate District, Division Two.—May 26, 1926.]

LOS ANGELES RAILWAY CORPORATION (a Corporation), Appellant, v. LOS ANGELES COUNTY FLOOD CONTROL DISTRICT (a Public Corporation) et al., Respondents.

[1] LOS ANGELES FLOOD CONTROL ACT—PROPERTY LIABLE FOR ASSESSMENT—LIEN AGAINST PUBLIC UTILITY.—The Los Angeles County Flood Control Act (Stats. 1915, p. 1502) expressly includes all taxable real property, and the lien arising from the assessment against a public utility is enforceable upon all the real property of the utility and not upon any portion of its rights of way.

[2] ID.—CONSTITUTIONAL LAW—PRESUMPTIONS—EXEMPTIONS—INTENT. Such act must be viewed in the light of every presumption and intendment favorable to its constitutionality; and if the legislature, in directing that the assessment should be made upon all the taxable real property in the district and in exempting from such

assessment the personal property therein only, had intended to exempt from such assessment the operative property of any public utility, it was necessary to have that exemption stated in explicit terms.

[3] Id.—Property of Public Utilities—Special Assessments.—The provision of section 14 of article XII of the constitution relating to a special mode of assessing the property of certain public utilities for state purposes, and exempting such property from taxation for local purposes, does not apply to assessments upon such property for special improvements; and the operative as well as the nonoperative real property of such utilities constitutes taxable real property within an assessment district.

[4] Id.—Specific Exemptions—Taxation of Real Property.—When a statute is general in its terms, any exemption or exception from its operation must be specific; and, therefore, when the legislature, in enacting the Los Angeles County Flood Control Act, declared that the tax should be levied upon all the taxable real property in the district, it included every class of real property in the district which was not by the constitution or statutes expressly exempted from that character of taxation.

[5] Id.—Power to Assess—Liability of All Property.—Under the Los Angeles Flood Control Act (Stats. 1915, p. 1502) the power was conferred upon the supervisors to impose a special assessment upon all the real property in the district to pay the interest and principal on the bonds of the district, and, to a limited extent, to raise a special fund for the general purposes of the district, and this power to assess goes to all the real property in the district, including the operative real property of public utilities.

[6] Id. — Collection of Assessments — Adoption of General Tax Machinery.—The provisions of sections 10 and 14 of said Flood Control Act that the assessments shall be levied and collected "at the time and in the same manner as general tax levy for county purposes," and of section 11 that all the provisions of the Political Code relating to the "manner of levying, assessing, equalizing, and collecting of taxes" are adopted and made a part of the act, mean that, though the levy is an assessment for benefits as distinguished from a general tax, the machinery for the imposition and collection of the charge is the same as that provided for in the case of general taxes; and the adoption of this general taxing machinery does not change the character of the charge which is imposed as a special assessment for benefits.

---

(1) 36 **Cyc.**, p. 1102, n. 87 New.   (2) 12 **C. J.**, p. 791, n. 19. (3) 36 **C. J.**, p. 1017, n. 79 New.   (4) 23 **C. J.**, p. 59, n. 22; 36 **Cyc.**, p. 1164, n. 68; 37 **Cyc.**, p. 761, n. 57 New.   (5) 36 **C. J.**, p. 1017, n. 80.   (6) 36 **C. J.**, p. 1017, n. 60 New.

4.   See 23 **Cal. Jur.** 743.

APPEAL from a judgment of the Superior Court of Los Angeles County. C. W. Guerin, Judge. Affirmed.

The facts are stated in the opinion of the court.

Gibson, Dunn & Crutcher, Gordon Boller and H. F. Prince for Appellant.

Edward T. Bishop, County Counsel, and J. A. Tucker, Deputy County Counsel, for Respondents.

Paul Overton and Samuel Poorman, as *Amici Curiae* in Support of Appellant.

NOURSE, J.—The plaintiff commenced this action to recover taxes paid under protest to the Los Angeles County Flood Control District, a public corporation. A demurrer to the complaint was sustained and this was followed by a judgment in favor of the defendants from which the plaintiff has appealed on the judgment-roll.

The complaint alleged that the plaintiff was a public utility corporation engaged within the boundaries of the Flood Control District in the business of transporting passengers for hire; that the District was created under the "Los Angeles Flood Control Act" (Stats. 1915, p. 1502); that, acting under the provisions of section 10 and 14 of said act, the board of supervisors of Los Angeles County levied for each fiscal year from 1916 to 1919-20, inclusive, a special tax on the real property in the District for the purpose of paying the interest and a portion of the principal on bonds theretofore issued by the District, said tax being levied upon all the real property in the District appearing on the assessment-roll prepared by the county assessor for each fiscal year mentioned; that the taxes levied against the plaintiff's operative real property for the fiscal years 1916–17, 1917–18, and 1918–19 were not paid and said properties were sold to the state because of the delinquency on June 29, 1917; that thereafter the plaintiff redeemed said properties by the payment of $7,382.10, and has paid, before delinquency, the additional sum of $8,223.58 to cover taxes levied for the year 1919–20; that the plaintiff filed with the board of supervisors of said county its verified

petitions and claims for the refund of .the money so paid, but the same were disallowed. It is then alleged that the taxes so levied were invalid in so far as they related to the operative real property of plaintiff as they were not authorized by the constitution and laws of the state of California and were especially forbidden by section 14 of article XIII of the constitution. The demurrer was on the general ground that the complaint failed to state a cause of action. In support of the demurrer the defendants argued that the taxes were not invalid for the reason alleged because they were in fact assessments as distinguished from the general taxes under the rule announced in *Los Angeles Flood Control Dist.* v. *Hamilton,* 177 Cal. 119 [169 Pac. 1028], and therefore did not come under the constitutional exemption.

Appellant, conceding the rule of the Hamilton case, insists on this appeal that the taxes are invalid because the Flood Control Act does not specifically declare that the operative property of public utilities shall be subject to assessment for these special taxes. In support of its position the appellant cites *Southern California Ry. Co.* v. *Workman,* 146 Cal. 80 [2 Ann. Cas. 583, 79 Pac. 586, 82 Pac. 79], *Fox* v. *Workman,* 155 Cal. 201 [100 Pac. 246], *Wilson* v. *Pacific Electric Ry. Co.,* 176 Cal. 248 [168 Pac. 128], *Los Angeles Pacific Co.* v. *Hubbard,* 17 Cal. App. 646 [21 Pac. 306], and *San Pedro etc. R. R. Co.* v. *Pillsbury,* 23 Cal. App. 675 [139 Pac. 669, 671]. From these authorities the appellant has formulated the rule of law that ''the operative property of the public utility is not assessable on account of a special improvement district unless the act creating such district and providing for assessment on account thereof specifically provided'' therefor. From our reading of the cases cited we are unable to draw from any one of them a rule as broad and far-reaching as that claimed by appellant.

The Workman case (146 Cal. 80 [2 Ann. Cas. 583, 79 Pac. 586, 82 Pac. 79]) involved an assessment upon the right of way of a steam railway to pay the cost of a street improvement under the Vrooman Act. The portion of the act under which the assessment was made read, ''the expenses incurred for any work authorized by this act . . . shall be assessed *upon the lots and lands fronting thereon.*'' (Stats. 1885, sec. 7, p. 147.) (Emphasis ours.) The case came before the su-

preme court on two appeals—one from the judgment on de-
murrer to the complaint and one from an order granting a
temporary injunction.  The latter appeal was dismissed on
the ground that the injunction was merged in the judgment
and the opinion rested on the judgment-roll alone.  The com-
plaint alleged that the assessor had attempted to assess the
"right of way" of the plaintiff abutting on Pasadena Ave-
nue on the basis of benefits for the improvement of the
street; that unless restrained by the court the treasurer
would proceed to sell that portion of the right of way cov-
ered by the assessment, and that such sale would result in a
dismemberment of plaintiff's railway system.  It appeared
that plaintiff was operating a railroad system of about 487
miles in length and that the lien covered about 9,000 feet
of its right of way.  Without interpreting the provisions of
the statute, and, as we read it, on the ground of public policy
alone, the supreme court held that "There is no authority
for making an assessment upon a right of way or for selling
the same.  A railroad company is a *quasi*-public corporation
in which the public is interested.  It holds a franchise from
the state and must operate its road or forfeit its franchise.
A part of its right of way cannot be sold on execution or
for a street assessment.  The decisions are not in harmony
on the question, but we think the best considered cases hold
that such right of way cannot be sold to satisfy a street as-
sessment."  Three cases from eastern jurisdictions were
cited in the opinion in support of the text quoted and a
reading of these cases discloses that the court in each case
rested its opinion on the ground of the public interest and
convenience, that is to say that in the absence of express stat-
utory procedure for the enforcement of the assessment lien
by some other method than the dismemberment of the rail-
way system the court would hold that it was not the inten-
tion of the legislature to make the right of way subject to
assessment and disrupt the public service rendered by the
railroad under its franchise.

In dissenting from the order denying a rehearing in the
Workman case, Beatty, C. J., gave a very clear explanation
of the meaning and effect of the opinion when he said: "For
although the decision only declares in terms that there is no
authority for making an assessment upon a right of way, it
means, when construed with reference to the facts of the

case, that you cannot assess or sell a tract of land belonging to a railroad company if its track extends over it without expressly exempting the right of way; that is to say, without reserving to the company in the express terms of the sale the exclusive right to use the land for all the purposes of its traffic. The proposition broadly laid down is that a part of a railroad company's right of way cannot be sold on execution or for a street assessment. Of course, it is consistent and logical to say that such property cannot be assessed if it cannot be sold, for there is no possible way of enforcing a delinquent assessment for street improvement except by a sale of the abutting lots, and an assessment which binds no one is equivalent to no assessment at all.''

Inasmuch as the Vrooman Act required that the assessment should run specifically to the property benefited and that the lien should attach to that property only, there was no way of enforcing an assessment against the railway's property except by a dismemberment of the operating system of the railway to the injury of the public. Our understanding of the reasoning of the court is that the law did not authorize the assessment and sale of a railroad right of way because, no provision having been made for reserving to the company the exclusive right to use the right of way for all purposes of its traffic under its franchise to serve the public, such authority should not be implied from the general grant of power to assess ''the lots and lands fronting on the improved portion of the street.'' The expression quoted had been in the Vrooman Act since its enactment in 1885 and had a well-known and accepted meaning as applying to the lots of land abutting the curb line of the street and ''fronting'' on the portion of the street to be improved. Then again the whole purpose and theory of the Vrooman Act was to provide a mode of procedure for the improvement of streets on the basis of benefits accruing to these abutting lots of land—among other things to provide the lot owners a convenient mode of egress and ingress. This theory of the original act was repugnant to the thought that it was intended to include in the assessment a right of way which would not be benefited by the street improvement. Because there was nothing in the act to indicate a departure from this well-known theory and because of the question of public interest and convenience involved, the court prop-

erly held that the power did not exist.   There is no intimation by our supreme court that if the Vrooman Act had expressly authorized the assessment and sale it would have been valid, and there is no holding that the failure to "expressly" include the public utility was the reason for the denial of the power to join it in the assessment.

*Fox* v. *Workman,* 155 Cal. 201 [100 Pac. 246], merely held that a bond issued upon the same assessment on the railroad right of way was void for the reasons stated in the earlier Workman case.   The Wilson case in 176 Cal. held, in an action to foreclose a street assessment lien on a railroad right of way, that the case was controlled by the two cases just cited.   In the course of the opinion in the Wilson case the court called attention to the fact that the assessment involved arose prior to the amendment to the Vrooman Act which expressly authorized the assessment of rights of way, but this was done merely to emphasize the fact that the case was controlled by the Workman cases which arose under the same statute.   In fact the only "rule" of the Wilson case is the one of *"stare decisis."*

In the Hubbard case 17 Cal. App. 646 [121 Pac. 306]) the appellate court referred with approval to the rule of the former cases and there held that, in the amendment to section 15 of the Street Opening Act of 1903, including in the assessment the "property of any railroad or street railroad," the legislature used the word "property" in its limited sense as applying only to land including the right of way and franchise, but excluding the improvements such as the tracks, ties, piles, etc.

In the Pillsbury case (23 Cal. App. 675 [139 Pac. 669]) the same court had for consideration a case arising under the Street Improvement Act of 1901 (Stats. 1901, p. 34). The only question before the court was whether the amendments to the Vrooman Act, and similar street improvement acts, had changed the public policy forbidding the assessment of railroad rights of way, as announced in the Workman cases, so that the power to assess such rights should be implied in the act of 1901, which had not been amended. The appellate court held that as the various acts provided for different kinds of street work under different modes of procedure it could not be implied from the amendment of the one class that the legislature intended to change the rule

as to the other. The opinion is of importance here only for the purpose of showing that up to the time of the enactment of the Flood Control Act the rule of the Workman case and those following it was one of public policy and convenience and nothing more.

[1] With this rule of law before it the legislature in June, 1915 (Stats. 1915, p. 1502) created a special taxing district designated as the Los Angeles County Flood Control District and which embraced practically all Los Angeles County, except the islands off the coast, for the special purpose of providing for the control of the flood and storm waters of the District, to conserve such waters for useful purposes, "and to protect from damage from such flood or storm waters the harbors, waterways, public highways and property in said district." By sections 10 and 14 of the act the District was authorized to levy a tax each year upon "the taxable real property" in such District to pay the cost of carrying out the objects and purposes of the act, and the interest and principal upon bonds issued by the District, and said tax was directed to be "levied and collected at the same time and in the same manner as the general tax levied for county purposes." By section 16 of the act it was provided that nothing in the act should be construed to authorize the supervisors to raise money for said District by any method or system other than that by the issuing of bonds or the levying of a tax upon the assessed value of *all* the real property in the District in the manner provided. In passing on the provisions of this act the supreme court in *Los Angeles Co. F. C. Dist.* v. *Hamilton,* 177 Cal. 119, 128 [169 Pac. 1028], held that though the act used the expression "tax" it in fact conferred authority merely to levy an assessment against the real property of the District on the basis of benefits and that the legislature itself had determined the question of these benefits when it authorized the assessment or tax against the real property on the basis of the assessed valuation thereof for general taxation purposes. In this proceeding it is conceded by the appellants that the taxes which are involved here were in fact assessments for benefits and that the provisions of section 14 of article XIII are not applicable for the purpose of relieving the operative property of public utilities from such assessments. This being so, the question presented is whether because of the rule in the Workman

case the failure of the legislature to expressly designate the
operative property of public utilities as subject to taxation
under the act relieves such property from taxation. As we
have seen, the rule in the Workman case was based upon
the question of public policy which would arise from the
dismemberment of the railroad system by enforcement of
the lien upon the portion of the railroad right of way as-
sessed. This question is in nowise involved in the case be-
fore us. The Flood Control Act expressly includes all tax-
able real property in the District and the lien arising from
the assessment against a public utility is enforceable upon
all the real property of the utility and not upon any par-
ticular portion of its rights of way. There is no reason,
therefore, for the application of the rule of public policy in
the interpretation of this statute, and where the reason for
the rule ceases the rule itself ceases.

[2] Furthermore, we must view the act "in the light of
every presumption and intendment favorable to its constitu-
tionality." (*Los Angeles Co. F. C. Dist.* v. *Hamilton, supra,*
p. 125.) With this in view, and treating the power to tax
as a power to assess for benefits, we find that the legisla-
ture has directed that the assessment shall be made upon all
the taxable real property in the District and that it has ex-
empted from such assessment the personal property situated
therein only. If it had been the intention of the legislature
to exempt from such assessment the operative property of
any public utility it was necessary to have that exemption
stated in explicit terms. By the provisions of section 1
of article XIII of the constitution all property in the state,
except as otherwise provided in the constitution, is to be
taxed in proportion to its value. Numerous exemptions ap-
pear in the constitution itself, but these do not include
either the operative or nonoperative property of public utili-
ties. [3] By section 14 of the same article of the constitu-
tion a special mode of assessing all the property of certain
public utilities for state purposes is provided and such prop-
erty is then exempted from taxation for local purposes. This
however, it has been conceded, does not apply to assessments
upon such property for special improvements, and we find,
therefore, that the operative as well as the nonoperative real
property of the utilities is in the category of "taxable real
property in such district" within the meaning of the Flood

Control Act. **[4]** It is unnecessary to cite authorities to the rule that when a statute is general in its terms any exemption or exception from its operation must be specific. Thus when the legislature declared that the tax should be levied upon all the taxable real property in the District it included every class of real property in the District which was not by the constitution or statutes expressly exempted from that character of taxation. Now the operative real property of the public utilities within the District, though exempt under section 14 of article XIII from general taxation by the District, but not being expressly exempted from local assessments, comes within the general classification of "taxable real property" and as such is subject to the assessments for the purpose of the act.

This conclusion follows all the more naturally because it is a matter of common knowledge that the purposes of the act were to protect from damage the public highways and other property in the District and that the demand for its enactment resulted from the great loss to property from destructive flood which had, for a long period of years, interrupted traffic within the District, washed away railroad bridges and damaged railroad tracks and rights of way and had caused enormous damage to the property owned by the various public utilities operating in the District.

Counsel for the Los Angeles Gas and Electric Corporation, a public utility owning operative property in the Flood Control District, have filed a brief as *"amici curiae,"* in which they advance the point that such property is not subject to taxation under the act because the only machinery provided in the act for the levy and collection of a tax is that provided for the levy and collection of the "general tax levied for county purposes" from which the operative property of these utilities is exempted by section 14 of article XIII of the constitution. The argument is that as this operative property is exempted from county general taxes the fact that the Flood Control Act adopted the county tax machinery as the only method of levying and collecting the "tax" for flood control purposes discloses an intention on the part of the legislature to exempt such operative property from the burdens of the act.

The answer to the point raised is a simple one and is found in the comprehensive opinion written by Mr. Justice

Sloss in the Hamilton case (177 Cal. 119, 128, 129 [169 Pac. 1028]). In that case it was held that though the word "tax" was used throughout the act the legislature in fact meant an assessment and that, accordingly, all the "taxing" provisions of the act were to be read as authorizing the imposition of a special assessment on the basis of benefits to the real property of the District. [5] Reading the act in the light of this decision we find that the power was conferred upon the supervisors to impose a special assessment upon all the real property in the District to pay the interest and principal on the bonds of the District, and, to a limited extent, to raise a special fund for the general purposes of the District. This power to assess goes to all the real property in the District. No real property in the District is expressly exempted, and we have seen that the operative real property of public utilities is not exempted from special assessment for benefits by reason of section 14 of article XIII or any other provision of the constitution. This, in fact, is conceded by the appellant, as indeed it must under the decisions. (*Southern Pac. Co.* v. *Levee Dist. No. 1*, 172 Cal. 345, 349 [156 Pac. 502]; *Los Angeles Co. F. C. Dist.* v. *Hamilton, supra.*)

[6] By sections 10 and 14 of the act it is provided that these assessments shall be levied and collected "at the time and in the same manner as the general tax levy for county purposes," and, by section 11, all the provisions of the Political Code relating to the "*manner* of levying, assessing, equalizing, and collecting of taxes" are adopted and made a part of the act. The evident meaning of these provisions of the act is that, though the levy is an assessment for benefits as distinguished from a general tax, the *machinery* for the imposition and collection of the charge is the same as that provided for in the case of general taxes. Summarizing in the light of the decision in the Hamilton case, the situation is this: The legislature has created a special taxing district and has declared that all the real property in the District (with certain unimportant exceptions) will be benefited by the proposed improvement. For the purpose of raising funds it has authorized the supervisors to assess all this real property and has declared that the bonds issued by the District shall be a lien upon "all the real property in the District." For the purpose of convenience to the owners of such prop-

erty, as well as to the county officials, it has provided that
these assessments shall be levied and collected in the same
manner and at the same time as general taxes for county
purposes. The adoption of this general taxing machinery,
however, does not change the character of the charge which
is imposed as a special assessment for benefits and the other
provisions of the act plainly subject to such assessments all
the real property in the District, including the operative real
property of public utilities.

Judgment affirmed.

Sturtevant, J., and Langdon, P. J., concurred.

A petition by appellant to have the cause heard in the
supreme court, after judgment in the district court of ap-
peal, was denied by the supreme court on July 22, 1926.