[Civ. No. 12935. First Dist., Div. One. Mar. 18, 1946.]

THE NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY (a Corporation), Appellant, v. STATE BOARD OF EQUALIZATION et al., Respondents.

David Livingston and Louis F. Di Resta for Appellant.

Robert W. Kenny, Attorney General, and T. A. Westphal, Jr., Deputy Attorney General, for Respondents.

WARD, J.—This is an appeal by plaintiff from a judgment in favor of the State Board of Equalization in a suit to recover taxes paid under protest. The case was tried under an agreed statement of facts and involves solely a question of law—the construction of the provisions of sections 14 and 14¾ of article XIII of the California Constitution. In respect to the point in controversy both sections read the same. However, the sections apply to different years, section 14 to taxes assessed in 1938, and section 14¾ to taxes assessed in 1939 and 1940.

The statement of facts sets forth in part: "In the years 1936 and 1937 plaintiff, hereafter sometimes called the Insurance Company, was the owner of certain real property in the County of Los Angeles. On or about July 1, 1936, certain levies — hereinafter more particularly described — were imposed on said properties which were paid by the Insurance Company as follows: one-half (½) in December, 1936 and one-half (½) in April, 1937. On or about July 1, 1937, certain levies were imposed on said properties one-half (½) of which was paid by the Insurance Company in December, 1937." Only one item is in dispute: "Said item represents the portion of the rate of said levy imposed pursuant to the provisions of the Act of the Legislature of the State of California, approved June 12, 1915 (Statutes of 1915, ch. 755, page 1502; [Deering's Gen. Laws, Act 4463]) known as the 'Los Angeles Flood Control Act,' and amendments thereto.

"The question for decision is whether said portion of said levy is deductible under the provisions of Article XIII, section 14 of the Constitution of California, viz: 'Every insurance company or association doing business in this State shall annually pay to the State a tax, assessed by the State Board of Equalization, of two and six-tenths per centum upon the amount of the gross premiums other than gross premiums from ocean marine insurance, received upon its business done in this State, less return premiums and reinsurance in companies or associations authorized to do business in this State; provided that there shall be deducted from said two and six-tenths per centum upon the gross premiums the amount of any taxes paid by such companies on real estate owned by them in this State. . . .' ''

In 1938 the insurance company filed a statement of taxes paid on real estate owned in the state of California with the state Insurance Commissioner. This statement included the entire amount paid during 1937, including "flood control levies." The same situation prevailed with respect to the deduction of taxes on real property for the years 1938 and 1939, including "flood control levies," from the gross premiums tax in 1939 and 1940. Some time in 1941 the Insurance Commissioner investigated the component parts of the amounts of real property and found that the items constituting "flood control levies" had been included in the real property taxes for the years 1937, 1938 and 1939 and reported such findings to the State Board of Equalization.

The commissioner reported that these flood control items which were deducted in the three years should be added to the tax levied in 1941. The board added to the tax levied in the year 1941 the aggregate amount of the previously deducted items constituting "flood control levies." This additional amount was paid under protest. If the items were properly deductible, judgment should go in favor of plaintiff. The trial court rendered judgment for defendants.

Appellant stresses the fact that for twenty-five years the Flood Control Act had been in force and the items in dispute had always been allowed as a deduction. Respondents replied that the commissioner had for the first time discovered the improper deduction in 1941. Moreover, on the 1938 return appears the following: "(b) Positively no irrigation or reclamation district taxes, nor special taxes and assessments, penalties, interest, nor other charges on account of delinquency of tax can be allowed." On the 1939 and 1940

returns appear the following: "(b) Positively no irrigation or reclamation district levies, nor other district assessments based upon the benefits accruing to real property as a result of improvements . . . can be allowed." The language on the forms indicates that the commissioner has consistently held that special assessments are not deductible.

■ It is appellant's theory that in providing for deduction of "taxes" the Constitution uses the word "taxes" in a broad and all inclusive sense. Appellant claims that its position is strengthened by the use of the word "any" in conjunction with "taxes." The word "any," as used, might well be defined as "all or every." It is true that·in this and other jurisdictions the word "taxes" often includes some form of assessments. To that extent the words have often been used synonymously. "The terms 'tax' and 'assessment,' except in the case of specific taxation, both include the idea of some ratio or rule of apportionment." (24 Cal.Jur., p. 38, § 22; see, also, *Holley* v. *County of Orange*, 106 Cal. 420 [39 P. 790]; *Neary* v. *Peterson*, 1 Cal.2d 703 [37 P.2d 82].)

■ A tax is an assessment levied on the person or the property involved and hence the terms have often been confused, but there is a difference that may be determined from the language‚ and legal effect of the particular statute involved. In *Ingels* v. *Riley*, 5 Cal.2d 154, 159 [53 P.2d 939, 103 A.L.R. 1], the court said: "It is impossible to lay down any positive rule by means of which the character of any given tax may be ascertained. In each case the character of the given tax must be ascertained by its incidents, and from the natural and legal effect of the language employed in the statute." (See, also, *Flynn* v. *San Francisco*, 18 Cal.2d 210 [115 P.2d 3]; *Edward Brown & Sons* v. *McColgan*, 53 Cal. App.2d 504 [128 P.2d 186].)

"There is a broad and well-recognized distinction between a·tax levied for general governmental or public purposes and a special assessment levied for improvements made under special laws of a local character." (*Inglewood* v. *County of Los Angeles*, 207 Cal. 697, 702 [280 P. 360]; see, also, *San Diego* v. *Linda Vista I. Dist.*, 108 Cal. 189 [41 P. 291, 35 L.R.A. 33]; *City Street Imp. Co.* v. *Regents etc.*, 153 Cal. 776 [96 P. 801, 18 L.R.A.N.S. 451]; *Holley* v. *County of Orange, supra.*) "Moreover, the law recognizes a distinction between property impressed with a public purpose and property of an agency not so impressed, for in the latter instance the

property may be sold for delinquent special assessments levied by other agencies or may be affected by adverse possession and other burdens of private property." (*La Mesa etc. Irr. Dist.* v. *Hornbeck*, 216 Cal. 730, 738 [17 P.2d 143].) "While the power of assessment comes from the general power of taxation it must not be confounded with it, for as we have seen in *Emery* v. *San Francisco Gas Co.* [28 Cal. 345], the words 'taxation' and 'assessment' are employed in the Constitution to represent different modes of exercising the general power of taxation, and also as indicating different objects and purposes in aid of which a resort to the taxing power may be had. In their origin and legal or constitutional complexion they are the same; but in the mode of their exercise, and in the effect of such exercise upon the property of the taxpayer they are essentially different." (*Taylor* v. *Palmer*, 31 Cal. 240, 251.) "A special assessment is taxation in the sense that it is a distribution of that which is originally a public burden. Clearly, however, a special or local assessment is not a tax in the sense of a tax to raise revenue for general governmental purposes. Taxes for revenue, or 'general taxes' as they are sometimes called by distinction, are the exactions placed upon the citizen for the support of the government, paid to the state as a state, the consideration of which is protection or public service by the state, whereas special or local assessments, sometimes called special taxes,' are imposed upon property within a limited area for the payment for a local improvement supposed to enhance the value of all property within that area. To enumerate significant differences between a special assessment and a tax, it may be observed: (1) A special assessment can be levied only on land; (2) a special assessment cannot (at least in many states) be made a personal liability of the person assessed; (3) a special assessment is ordinarily based wholly on benefits; and (4) a special assessment is exceptional both as to time and locality. The imposition of a charge on all property, real and personal, in a prescribed area, is a tax and not an assessment, although the purpose is to make a local improvement on a street or highway. A charge imposed only on property owners benefited is a special assessment, rather than a tax, notwithstanding the statute calls it a tax. It has been ruled that a special assessment is not, in the constitutional sense, a tax at all." (48 Am.Jur., pp. 565-567, § 3; see, also, McQuillin, Municipal Corporations, 2d ed., vol. 5, p. 699; Cooley

on Taxation, 4th ed., p. 105, § 31; Hamilton, Law of Special Assessments, ch. III, p. 148.)

The Supreme Court of this state has declared in reference to this particular flood control district: "The interveners point to the fact that the legislature has used the word 'tax' throughout the act, and does not anywhere refer to the charge as an assessment. Furthermore, such 'tax' is to be levied and collected in the same manner, by the same machinery, and at the same time as general taxes. These facts are not, however, conclusive. The word 'tax' is used, with equal propriety, in two distinct senses. In its broad meaning the word includes both general taxes and special assessments. (*Chicago G. W. Ry. Co.* v. *Kansas City N. W. Ry.*, 75 Kan. 167 [12 Ann. Cas. 588, 88 P. 1085]; 1 Page and Jones on Taxation by Assessment, sec. 40; see, also, *In re Madera Irr. Dist.*, 92 Cal. 296 [27 Am.St.Rep. 106, 14 L.R.A. 755, 28 P. 272, 675].)" (*Los Angeles County F. C. District* v. *Hamilton*, 177 Cal. 119, 128-129 [169 P. 1028].) Courts have always assumed, upon stipulation or otherwise, since the decision in the Hamilton case, that under the provision of the Los Angeles County Flood Control District Act (Stats. 1915, p. 1502; Deering's Gen. Laws, Act 4463), it is an assessment for benefits and not a tax that may be imposed. To the same effect, see *Los Angeles Railway Corp.* v. *Los Angeles County Flood Control Dist.*, 78 Cal.App. 173 [248 P. 532]; *Los Angeles County Flood Control Dist.* v. *Superior Court*, 207 Cal. 709 [280 P. 366]; *Inglewood* v. *County of Los Angeles, supra; Los Angeles County Flood Control Dist.* v. *Wright*, 213 Cal. 335 [2 P.2d 168]; *Los Angeles* v. *Los Angeles C. F. C. Dist.*, 11 Cal.2d 395 [80 P.2d 479]; *Chesebro* v. *Los Angeles County Flood Control Dist.*, 306 U. S. 459 [59 S.Ct. 622, 83 L.Ed. 921].)

■ The above citations must be accepted as authority that, notwithstanding the use of the word "tax," the Los Angeles flood control statute does not provide for a tax but rather a special assessment with benefits conferred on the specific property for which the levy compensates.

■ A deduction in the amount of taxation does not include a deduction of special assessments unless expressly stated in a statute. Article XIII, sections 14 and 14¾ of the Constitution permits deduction to insurance companies upon payment of a stated percentage upon gross premiums of any taxes paid by them on real estate in this state. To be available and advantageous to appellant, the Constitution would

have to provide for a deduction not only of any taxes but in addition any special assessment. The constitutional provision is silent on special assessments. It must be held that taxes, but not assessments, are deductible under sections 14 and 14¾ of article XIII of the California Constitution. This conclusion finds support not only in the cases cited but for a practical and equitable reason. Taxes contribute to the general cost of governmental expense whereas the assessments imposed under the Los Angeles Flood Control Act are for the benefit of the particular property assessed. The gross premiums tax is in lieu of all other taxes and was intended as an ad valorem tax on particular businesses whose tangible property did not represent its true value for purposes of apportioning the cost of general governmental functions. ▆ Inasmuch as the constitutionality of the Flood Control Act must be and has been sustained as a special assessment conferring particular benefits on the land assessed, to allow its deduction from the gross premiums tax would permit the insurance company to benefit therefrom without paying a corresponding tax. This was not the intent of the constitutional provision. The "flood control levies" are not taxes, but have all the essential elements of assessments for benefits only to those owning property in a specified area. Such assessments do not come within the purview of "any taxes." ". . . a special assessment is not, in the constitutional sense, a tax at all." (*Spring Street Co.* v. *City of Los Angeles*, 170 Cal. 24, 29 [148 P. 217, L.R.A. 1918E 197].)

The judgment is affirmed.

Peters, P. J., and Schottky, J. pro tem., concurred.

A petition for a rehearing was denied April 17, 1946, and appellant's petition for a hearing by the Supreme Court was denied May 16, 1946. Shenk, J., and Schauer, J., did not participate.