[S. F. No. 16022. In Bank.—March 21, 1939.]

F. C. DOUGHERTY, Respondent, v. CALIFORNIA KETTLEMAN OIL ROYALTIES, INC. (a Corporation), Appellant.

William M. Abbott, William M. Cannon, Joseph F. Leonard, Michael F. Shannon and Thomas A. Wood for Appellant.

Sullivan, Roche & Johnson and Rogers and Clark for Respondent.

THE COURT.—California Kettleman Oil Royalties, Inc., appeals from an order of the superior court denying its motion for an order directing the clerk of the court to enter satisfaction of a certain final judgment secured by Dougherty against appellant. The motion to enter satisfaction was predicated upon the fact that after respondent Dougherty, in an action against appellant, had secured a judgment that he was the owner of certain oil royalties, and that appellant held them in trust for respondent, and while that judgment was on appeal, respondent entered into a written agreement settling his dispute with another claimant to a portion of the royalties—the administratrix of the estate of Washington H. Ochsner. It is appellant's position that Ochsner and its predecessor were joint tort feasors; that the agreement between respondent and the administratrix of Ochsner's estate constituted the compromise and settlement of a tort action with one joint tort feasor and a release from further liability of that tort feasor; that under elementary principles

a release of one joint tort feasor releases all. Based on these premises it is urged that appellant has been released from all liability under the judgment. The incongruous nature of appellant's claim is disclosed by the fact that were appellant to prevail on this appeal it would result in appellant securing title to about 58 per cent of certain accrued and to be accrued oil royalties after it has been finally determined by this court that appellant has no lawful claim to any portion of these royalties, and that they are the property of respondent.

The facts giving rise to this controversy, including an analysis of the pleadings, have been fully set forth in the opinion of this court on the appeal from the judgment. (*Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 9 Cal. (2d) 58 [69 Pac. (2d) 155].) So far as pertinent here the facts are as follows: In 1920 Dougherty and Ochsner entered into a written but unsigned contract whereby in return for certain valuable services to be rendered by Dougherty in securing for Ochsner a certain oil permit, Ochsner agreed that Dougherty should be entitled to 10 per cent of all oil or gas produced under the permit. Dougherty fully performed his part of the agreement, and as a result of his efforts Ochsner secured the permit. Ochsner, although frequently promising to do so, failed to sign the written agreement which admittedly embodied the full agreement between the parties. In 1923, Dougherty, after some negotiations with Ochsner, voluntarily reduced his 10 per cent interest to 5 per cent. In August of the same year, Ochsner, who, under his agreement with Dougherty, had full control over the permit, assigned the permit to the Coast Land Company, reserving to himself an overriding royalty of 7½ per cent of all oil or gas produced from the so-called discovery area, referred to as the "A" royalties, and 2½ per cent from the balance of the area, referred to as the "B" royalties—a percentage mathematically less than the 5 per cent owned by Dougherty under his contract with Ochsner. Later on the same day, Ochsner assigned 6½ per cent of the "A" royalties and 2 per cent of the "B" royalties to Universal Oil Land Company, a corporation organized and owned by Ochsner and two of his friends. Several months later Ochsner assigned to the same company the 1 per cent of the "A" royalties

and the ½ per cent of the ''B'' royalties still retained by him. The Coast Land Company assigned the permit to the General Petroleum Corporation, both it and its assignor being without knowledge of Dougherty's interest in the proceeds of the permit.

Upon discovering the true facts, Dougherty immediately notified all concerned of his claims, and commenced an action against Ochsner, Coast Land Company, General Petroleum Corporation, and the Universal Oil Land Company. The original complaint was predicated on the theory that as a result of a joint enterprise between Ochsner and Dougherty each owned one-half of the reserved royalties, a theory adopted by Dougherty's then counsel for the reason that he apparently felt that the unsigned written contract would be difficult to prove. After several amendments to the original complaint, and after all the defendants were fully informed that Dougherty's claim was predicated on the 10 per cent contract later reduced to 5 per cent, Ochsner died and the administratrix of his estate was substituted as a defendant. In 1928, *pendente lite,* Ochsner's two associates in Universal, organized appellant corporation—The California Kettleman Oil Royalties, Inc., and caused Universal to assign to it the 7½ per cent ''A'' royalties and the 2½ per cent ''B'' royalties. Ochsner's estate received some of the stock of this new corporation. Dougherty thereupon joined appellant as a party. Appellant cross-complained, seeking to quiet its title to the royalties. In his answer to this cross-complaint Dougherty clearly alleged the existence of his 5 per cent contract. Prior to trial, the action was dismissed as to all defendants except appellant. After a protracted trial judgment was entered in favor of Dougherty, the trial court holding that all royalties assigned to appellant were held in trust for respondent. On the appeal from that judgment, as already stated, the judgment was affirmed, the opinion being filed in May of 1937. (*Dougherty* v. *California Kettleman Oil Royalties, Inc., supra.*)

While the appeal was pending, the appellant, the administratrix of Ochsner's estate, and Universal, entered into a written agreement concerning the division of the royalties among themselves. From that agreement it appears that Ochsner's estate owned some of the stock of Universal, and

that the corporation was desirous of securing that stock; that Universal and appellant had never claimed title to the 1 per cent of ''A'' royalties and ½ per cent of ''B'' royalties assigned to Universal by Ochsner, but had in fact executed an agreement declaring these were held in trust for Ochsner; that appellant had borrowed $800,000 from the General Petroleum Corporation and had assigned to that company as security by way of pledge the 6½ per cent of ''A'' royalties and 2 per cent of ''B'' royalties held by it; that a large sum of money had accrued on these royalties; that the three contracting parties were desirous of segregating their respective interests in these royalties. The agreement recognizes that of the original 7½ per cent-2½ per cent royalties, Ochsner's estate is the owner of 1 per cent of the ''A'' royalties and ½ per cent of the ''B'' royalties. In addition, in consideration of the estate transferring to Universal the stock owned by the estate in Universal, that company and appellant agreed to transfer to the estate 27 per cent plus of the total ''A'' royalties, and 25 per cent plus of the total ''B'' royalties, subject to a proportionate amount of the indebtedness owed to General Petroleum Corporation. Under this agreement, as among the three contracting parties, there was transferred to the Ochsner estate 40 per cent plus of the ''A'' royalties and 45 per cent of the ''B'' royalties, both accrued and to accrue. This is roughly 42 per cent of the total royalties. The Ochsner estate recognized that the balance of the royalties—roughly 58 per cent—as against the estate were the property of appellant. The agreement also recognized the existence of Dougherty's judgment then on appeal, and provided that in the event it finally should be determined that Dougherty owned any portion of these royalties, then each of the contracting parties should transfer and assign to Dougherty a proportion of the royalties, reserving to the administratrix the right to contest the application of that judgment to the portion of the royalties owned by her. This agreement was duly submitted by the administratrix of Ochsner's estate to the superior court sitting in probate and that court on September 2, 1936, made and entered its order authorizing and directing the administratrix to make, execute and perform the agreement.

It should be mentioned that the estate of Ochsner at all times claimed the 1 per cent royalty on the "A" area and the ½ per cent on the "B" area adversely to both appellant and respondent, and was contending that the judgment in the pending case, even if affirmed, would not be binding as to these royalties.

After the agreement above described had been entered into, and while the appeal was still pending, Dougherty and Ochsner's estate entered into a written agreement whereby they settled their dispute by agreeing to divide the total royalties claimed by the estate between themselves. This agreement is the contract upon which appellant herein relies as constituting the release of one joint tort feasor, which legally released it from any liability to respondent.

The agreement recites that the Ochsner estate claims an interest in the oil royalties payable from General Petroleum Corporation; that Dougherty claims a 5 per cent royalty interest in all oil or gas produced under the permit (which claim is larger than all royalties reserved by Ochsner); that as against appellant the superior court has decreed that Dougherty owns all of said royalties; that said judgment is pending on appeal; that the estate claims that the judgment in that action, if affirmed, would not affect the estate's claim to 1 per cent of the "A" royalties and ½ per cent of the "B" royalties; that the estate and Universal and Kettleman have settled their dispute by dividing the royalties; and then state that:

"it is the desire of the parties hereto (the estate and Dougherty) to adjust their interest as between each other . . . so that each may hold and own separate and apart from any claim of the other a definite royalty interest in and to all oil or gas and other hydro-carbon substances produced from said lands or allocated thereto, and in and to all accumulated royalties and moneys, now in the possession of said General Petroleum Corporation of California".

Next follows the provisions for the division between these two parties of the royalties transferred to the estate under its agreement with Kettleman and Universal. The estate agreed to transfer to Dougherty 16 per cent plus of the "A" royalties and 18 per cent plus of the "B" royalties, leaving in the estate 24 per cent plus of the "A" royalties and 27

per cent plus of the ''B'' royalties. The contracting parties recognized and confirmed each other's ownership of the royalties as so divided, and each agreed to assume a proportion of the indebtedness due General Petroleum Corporation. It was expressly provided that the agreement should have no effect upon the then pending litigation between Dougherty and Kettleman. This agreement was also submitted to the superior court sitting in probate by the administratrix of Ochsner's estate, and that court made and entered its order authorizing and directing the administratrix to make, execute and perform the agreement.

A few days after the decision of this court on the appeal had become final, the appellant, on July 8, 1937, filed its motion under section 675 of the Code of Civil Procedure asking the trial court to make an order directing the clerk to enter satisfaction of the final judgment on the ground that the judgment had been satisfied in fact. Upon denial of the motion this appeal was taken.

On this appeal it is the theory of appellant that the action prosecuted to final judgment by Dougherty against appellant was upon a cause of action *ex delicto*; that Ochsner and Universal, appellant's assignor, were joint tort feasors; that when Dougherty settled with the Ochsner estate and released the estate from liability, he was releasing one of two joint tort feasors; that under the law of California the release of one of two or more joint tort feasors releases all, and that Dougherty is now estopped from claiming that the estate was not in fact at fault and not liable for the injury; that the legal effect of the agreement was to release appellant from the judgment.

The rule that a release of one of two or more joint tort feasors operates as a release of all is well settled in this state. The rule and the reasoning upon which it is based have frequently been stated. (*Tompkins* v. *Clay Street R. R. Co.,* 66 Cal. 163 [4 Pac. 1165]; *Chetwood* v. *California Nat. Bank,* 113 Cal. 414 [45 Pac. 704]; *Flynn* v. *Manson,* 19 Cal. App. 400 [126 Pac. 181]; *Hawber* v. *Raley,* 92 Cal. App. 701 [268 Pac. 943]; *Bee* v. *Cooper,* 217 Cal. 96 [17 Pac. (2d) 740].) These and other cases that could be cited, disclose that the theory behind the rule is that there can be but one compensation for the joint wrong; that each joint tort feasor is re-

sponsible for the whole damage, and that once the injured party is paid for the injury he has suffered by any one of the wrongdoers, his cause of action is satisfied and his right to proceed against the others is at an end; or, stated in another way, if the payment is, in law, a satisfaction of the claim against one, it is a satisfaction of the entire claim and necessarily releases all. Several of the cited cases emphasize, and properly so, that the claim against joint tort feasors is unliquidated, and, therefore, the payment of any sum, however small, in consideration of a release of that claim, operates as full compensation for that wrong. Basically, the rule is intended to prevent double compensation for the injury.

These principles were clearly stated and properly applied by this court in *Bee* v. *Cooper, supra,*—a case strongly relied upon by appellant on the present appeal. In that case, seven former directors of a corporation and other participating parties were sued for their alleged fraudulent disposition of the assets of a corporation pursuant to an alleged fraudulent conspiracy. The complaint alleged the fraud in detail, and it was further alleged that as a result of such fraud each of the defendants secured a portion of the diverted assets. The plaintiffs were not seeking restitution of specifically described diverted assets, but were seeking damages for the fraud.

The complaint also alleged that after the commencement of the action five of the seven directors had returned the respective amounts each had received out of the fraudulent deal, and that, in return, plaintiffs had agreed to settle and dismiss the action as to them. On appeal this court held that all the original defendants were joint tort feasors; that the agreement to release five of the defendants constituted the release of all of the joint tort feasors; that the release of one 'or more releases all; that the basis of the rule is that a plaintiff can have but one compensation for the wrong suffered; that when a plaintiff releases one or more joint tort feasors he announces that he has received satisfaction for the injury complained of, and he cannot secure double payment for the single wrong. After pointing out that the joint tort feasor rule has no application to joint contract debtors (sec. 1543 of the Civil Code), the court held that the particular ac-

tion was not one in equity to recover corporate assets, but one predicated upon a charge *ex delicto* for damages for fraudulently conspiring to divert corporate assets.

In our opinion, the rule and theory of *Bee* v. *Cooper, supra,* and the other cases cited by appellant, have no application to the facts of the instant case, for the reason that the allegations of the complaint, the theory of the parties on the trial and on appeal, and the rationale of the opinion of this court, clearly demonstrate that basically the action sounds in contract and not in tort. Dougherty was not seeking damages based upon the fraud of appellant, but was seeking to have it determined that the appellant held the title to the royalties in trust for him. That action was basically predicated upon respondent's written but unsigned contract with Ochsner. The contract was the *sine qua non* of the cause of action.

A reading of this court's opinion on the prior appeal conclusively demonstrates that the cause of action sounds in contract. In that opinion, after discussing the findings and complaint, and after holding that the action was not one for the recovery of possession or quieting title to *real estate* within the meaning of article VI, section 5 of the state Constitution, and after holding that the action was (p. 80) "an equitable action to enforce a trust", it is pointed out that the main question involved (which is discussed at length) was whether the written but unsigned contract was unenforceable because of the statute of frauds. It was held that the appellant, under the facts, was estopped to plead the statute of frauds, and that the contract was enforceable. One of the main arguments of appellant on that appeal was that even if the contract was enforceable against Ochsner, the covenant contained therein to pay Dougherty 5 per cent of the oil or gas produced under the permit was a mere personal covenant not binding on the assignees of Ochsner. It was held that this covenant, i. e., this contract, was enforceable in equity as against assignees with notice. The entire emphasis of the opinion is that the contract between Dougherty and Ochsner was enforceable as against appellant.

Again (p. 82) the court points out that under the contract Ochsner had the legal right to deal with the permit, except that under the terms of that contract he was legally bound to reserve and protect the percentage he had already assigned

to Dougherty; that when "Ochsner assigned the permit to the Coast Land Company reserving a percentage that is mathematically less than the percentage he had already assigned to Dougherty, the percentage reserved was the property of Dougherty". In other words, at that moment Ochsner became trustee of a trust—an express trust—predicated upon the terms of the contract. The transfer of the trust property to Universal and by it to appellant constituted clear breaches of the contractual duty owed Dougherty, and the assignees took subject to the terms of that contract.

It is true that under the facts of the case Ochsner and appellant acted fraudulently in concealing the existence of the Coast Land Company deal from Dougherty, and in the manner in which they dealt with the royalties. These facts are alleged in the complaint and recounted in the opinion of this court as part of the facts of the case. The cause of action, however, was not predicated on that fraud. It would have existed whether or not such actual fraud was present. It is also true that under the pertinent provisions of the Civil Code (sec. 2228 et seq., see particularly sec. 2234) it is a fraud upon the beneficiary for a trustee to transfer trust property to another without protection and in violation of the beneficiary's rights. There can be no doubt that Dougherty could have sued Ochsner and appellant for damages for this and the other frauds, but the point is he did not, but elected to sue for the enforcement of his contract with Ochsner. It is elementary that a person injured under circumstances where he may sue in either tort or contract, may waive the tort and sue on the contract. (*Stanford Hotel Co.* v. *M. Schwind Co.*, 180 Cal. 348 [181 Pac. 780]; *Philpott* v. *Superior Court*, 1 Cal. (2d) 512 [36 Pac. (2d) 635, 95 A. L. R. 990].) These same cases establish that the mere fact a pleading contains allegations of fraud does not convert a contract action into a tort action.

There are other factors involved which conclusively demonstrate that the joint tort feasor rule has no application to this case. Under the cause of action here pleaded, Ochsner, Universal and appellant were not each jointly liable for the entire claim of Dougherty. Appellant, as the sole defendant, was liable only for those royalties to which it had the legal title. If the true facts were, as contended by Ochsner's estate, that Ochsner had assigned but 6½ per cent of the

"A" royalties and 2 per cent of the "B" royalties to appellant, and had reserved the balance of the royalties in himself, in the action against appellant, under the cause of action as pleaded, the court could only have decreed that appellant was trustee of the portion of the royalties assigned to it. There would have been no possibility of Dougherty recovering his full claim against appellant. Under the supposed state of facts, each defendant would be liable only for the portion of the royalties claimed by it. This obviously demonstrates that the action was not one for damages for fraud, but was predicated upon an express contract. All that respondent was seeking to recover from appellant were the royalties claimed by it. Under the form of action actually brought there was no possibility of double compensation to Dougherty. Respondent was merely seeking to establish his claim, based on contract, to specific property. In substance and effect it was an action to quiet title to the royalties, the respondent using the mechanism of an action in equity to establish a trust as to specific property to accomplish that result.

Appellant concedes, as it must, that during the trial it strenuously urged that the action was one based on contract; that on the appeal, down to the denial of the petition for rehearing, it was urged by both parties that the action sounded in contract. It contends that it was not until the opinion was filed that it learned for the first time the action was in fact one in tort. But as already pointed out, the gravamen of the action was the breach of the contract between Ochsner and Dougherty, and that is what the opinion heretofore filed clearly and unequivocally holds.

Appellant advances many other ingenious and highly technical arguments in support of its contention that the cause of action sounds in tort. These need not be separately considered. They are all answered by the holding that the action sounds in contract.

The order appealed from is affirmed.

Rehearing denied.