[Civ. No. 2781. Fourth Dist. Nov. 7, 1941.]

MICHAEL F. SHANNON et al., Appellants, v. GENERAL PETROLEUM CORPORATION OF CALIFORNIA (a Corporation) et al., Respondents.

Michael F. Shannon, *in pro. per.*, Cruickshank, Brooke & Dunlap and Thomas A. Wood for Appellants.

Sullivan, Roche & Johnson for Respondents Dougherty et al.

Edwin S. Pillsbury and McCutchen, Olney, Mannon & Greene for Respondent administratrix.

MARKS, J.—This is an appeal from two judgments entered after two separate demurrers had been sustained to plaintiffs' amended complaint. Plaintiffs sought judgment for large sums of money received as oil royalties, for a decree that certain oil royalties were held in trust for them, and that certain defendants convey those royalties to them.

This case is an outgrowth of the dealings of Washington H. Ochsner with oil interests under a prospecting permit which he obtained from the United States on April 16, 1921, permitting him to prospect for oil on government land in the Kettleman Hills, in Kings County, which permit ripened into oil leases.

The factual background for this litigation is spread on the books at considerable length. (See *Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 9 Cal. (2d) 58 [69 Pac. (2d) 155]; *Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 13 Cal. (2d) 174 [88 Pac. (2d) 690]; *Morrow* v. *Coast Land Co.*, 29 Cal. App. (2d) 92 [84 Pac. (2d) 301]; *Arnold* v. *Universal Oil Land Co.*, 45 Cal. App. (2d) 522 [114 Pac. (2d) 408]; *Medallion Oil Co.* v. *Hinckley*, 92 Fed. (2d) 155.) We will not again repeat those facts at length, but will endeavor to confine ourselves to as brief a summary of such of them as is necessary to an understanding of the issues presented.

Ochsner had difficulty in obtaining his prospecting permit and employed F. C. Dougherty to assist him in securing it, promising Dougherty a 10 per cent interest in the permit when obtained. By agreement this was subsequently reduced to a 5 per cent interest.

On August 17, 1923, Ochsner assigned the permit to the Coast Land Company, reserving to himself 7½ per cent of the oil and gas produced from the discovery area and 2½ per cent of the oil and gas produced from the balance of the property. On October 8, 1923, the Coast Land Company assigned its interest in the permit to the General Petroleum Corporation, predecessor of the General Petroleum Corporation of California, which on January 8, 1930, brought into large production the first well successfully drilled on the property. On July 23, 1930, the United States issued a lease on 640 acres of the permit land, hereafter called A Class property, to the General Petroleum Corporation of California and on July 9, 1931, a second lease on 1898.24 acres, hereafter called B Class property, to the same corporation. In 1931, the Kettleman North Dome Association was formed, which subsequently conducted the oil operations on this and much adjacent property.

Ochsner, R. H. Arnold, and Richard Young organized the Universal Oil Land Company in which they were the sole

officers and directors. About August 17, 1923, Ochsner assigned a 6½ per cent royalty in the A Class lands and 2 per cent royalty in the B Class lands to the Universal Oil Land Company, thus reserving 1 per cent in the former and ½ per cent in the latter to himself. About August 20, 1923, he assigned these reserved royalties to the same corporation, probably in trust for himself.

Ochsner died in 1927, and Hilda Carling Hinckley was appointed and qualified as administratrix of his estate.

In December, 1928, the California Kettleman Oil Royalties, Inc., was incorporated and in January, 1929, the Universal Oil Land Company assigned to it the royalties it had received from Ochsner.

Plaintiffs claim by assignment from Universal Oil Land Company and California Kettleman Oil Royalties of those corporations' interests in the Ochsner royalties derived from the permit property. Plaintiffs, with others, were attorneys for either or both of the corporations in all but one of the cases we have cited.

The primary problem to be decided is what interest, if any, either or both of these assignors had in the Ochsner royalties to assign to plaintiffs, for if the corporations had no interest in the royalties they could transfer none to plaintiffs and the demurrers were properly sustained.

On November 21, 1924, Dougherty filed suit in the Superior Court of San Francisco against Ochsner, Coast Land Company, General Petroleum Corporation and Universal Oil Land Company, to establish his interest in the royalties in the permit property. The case took a long and devious course through the trial court. The California Kettleman Oil Royalties, Inc., finally appeared as the sole defendant. On June 25, 1935, the superior court rendered judgment in favor of Dougherty for a 5 per cent royalty in all of the oil and gas produced and saved from the lands covered by the Ochsner permit, holding that a trust existed in his favor. The trial court found that this 5 per cent was more than the 7½ per cent from the A Class land and the 2½ per cent from the B Class land which Ochsner had reserved to himself and assigned to the Universal Oil Land Company, which assigned to California Kettleman Oil Royalties, Inc. It follows that after that judgment became final and was enforced and the trust executed, neither of those corporations

had any interest in the royalties to assign to plaintiffs. Plaintiffs virtually admit the correctness of this conclusion but maintain that the corporations or one of them acquired an interest in the royalties, independent of the Ochsner assignments, through certain contracts executed in 1936.

The California Kettleman Oil Royalties, Inc., appealed from the judgment against it in favor of Dougherty. This judgment was affirmed on May 27, 1937, and the Supreme Court denied a rehearing (*Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 9 Cal. (2d) 58 [69 Pac. (2d) 155]). In speaking of the effect of the Ochsner-Dougherty contract, that court said:

"Under Dougherty's contract with Ochsner, the latter had the right to assign the permit except that he was bound to reserve and protect the percentage already assigned to Dougherty. The court has found, and such finding is supported by the record, as well as by reason and the law, that when Ochsner assigned the permit to the Coast Land Company reserving a percentage that is mathematically less than the percentage he had already assigned to Dougherty, the percentage reserved was the property of Dougherty. This is the clear holding in *Merritt Oil Corp.* v. *Young,* 43 Fed. (2d) 27."

In considering the question of the statute of limitations, it was contended that the case could not affect the Universal Oil Land Company because the action had been dismissed as to it and California Kettleman Oil Royalties, Inc., had not been substituted in its place. The Supreme Court considered this question on pages 84 and 85 of the opinion. (*Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 9 Cal. (2d) 58 [69 Pac. (2d) 155], *supra*. See, also, *Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 13 Cal. (2d) 174 [88 Pac. (2d) 690].)

Three conclusions are obvious from these decisions: First, Universal Oil Land Company parted with all interest in the Ochsner royalties when it assigned them to the California Kettleman Oil Royalties, Inc., in January, 1929. Second, the fact of the trust by Ochsner and his successors was thoroughly litigated and decided and is binding on the parties and those in privity with them, which include the plaintiffs. Third, that the royalties assigned to Dougherty and held in trust for him by Ochsner and his successors exceeded

the royalties reserved by Ochsner, so that he had no reserved royalties to assign to either corporation which claims under him.

In *Estate of Clark,* 190 Cal. 354 [212 Pac. 622], at page 360, the Supreme Court said:

"That judgment is binding not only in proceedings upon the same but also upon a different cause of action in so far as it settles and determines questions of fact. (23 Cyc., 1288–1290.) It is well settled that a judgment or decree necessarily affirming the existence of any fact is conclusive upon the parties or their privies whenever the existence of that fact is again in issue between them, not only when the subject matter is the same, but when the point comes *incidentally* in question in relation to a *different* matter in the same or any other court. (Freeman on Judgments, secs. 249 and 253; *Lamb* v. *Wahlenmaier,* 144 Cal. 91 [103 Am. St. Rep. 66, 77 Pac. 765]; *Reed* v. *Cross,* 116 Cal. 473, 484 [48 Pac. 491]; *Atchison & S. F. Ry.* v. *Nelson,* 220 Fed. 53 [135 C. C. A. 621].) That is to say, 'a matter of fact once adjudicated by a court of competent jurisdiction, concurrent or exclusive, may be relied upon as an estoppel in any subsequent collateral suit in the same or any other court, at law, in chancery, in probate or in admiralty, when either party, or the privies of either party, allege anything inconsistent with it, and this too whether the subsequent suit is upon the same or a different cause of action. The facts decided in the first suit cannot be disputed.' (Bigelow on Estoppel, pp. 110, 111, 112; *Rauer* v. *Rynd,* 27 Cal. App. 556 [150 Pac. 780].)" Supporting this rule are: *Southern California Ry. Co.* v. *Workman,* 146 Cal. 80 [79 Pac. 586, 82 Pac. 79, 2 Ann. Cas. 583]; *Fox* v. *Workman,* 155 Cal. 201 [100 Pac. 246]; *Bingham* v. *Kearney,* 136 Cal. 175 [68 Pac. 597]; *Horton* v. *Goodenough,* 184 Cal. 451 [194 Pac. 34]; *Martin* v. *Holm,* 197 Cal. 733 [242 Pac. 718]; *Price* v. *Sixth Dist. Agricultural Assn.,* 201 Cal. 502 [258 Pac. 387]; *Todhunter* v. *Smith,* 219 Cal. 690 [28 Pac. (2d) 916]; *White* v. *Lantz,* 126 Cal. App. 693 [14 Pac. (2d) 1041]; *Olney* v. *Cavell,* 138 Cal. App. 233 [32 Pac. (2d) 181]; *Hardy* v. *Rosenthal,* 2 Cal. App. (2d) 442 [38 Pac. (2d) 412]; *Bacon* v. *Kessel,* 31 Cal. App. (2d) 245 [87 Pac. (2d) 857]; and *Murdock* v. *Eddy,* 38 Cal. App. (2d) 551 [101 Pac. (2d) 722].

Following the judgment in *Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 9 Cal. (2d) 58 [69 Pac. (2d) 155], we must conclude that the judgment in favor of Dougherty left no part of the oil royalties in plaintiffs' assignors that could be assigned to them. To escape the effect of this obviously correct conclusion plaintiffs rely on paragraphs of two contracts executed by the estate of Washington H. Ochsner, deceased, and approved by the probate court in which that estate was pending.

After the decision of the superior court in favor of Dougherty in his action to declare a trust in his favor in the oil royalties, and while that case was on appeal, the administratrix of the estate of Washington H. Ochsner began negotiations in an endeavor to save some of those royalties for the estate, all of which would go to Dougherty if the judgment should be affirmed on appeal. These negotiations resulted in two contracts under which plaintiffs claim.

The first contract bears date of August 14, 1936, and was made by Hilda Carling Hinckley, as administratrix of the estate of Washington H. Ochsner, deceased, as first party, Universal Oil Land Company, as second party, and California Kettleman Oil Royalties, Inc., as third party. It purported to settle the conflicting claims of the parties to the oil royalties in question here and large sums of money accrued on those royalties, to 100 shares of stock owned by the estate in Universal Oil Land Company which owned 85 per cent of the stock in California Kettleman Oil Royalties, Inc., to a $50,000 loan by the latter corporation to the former, to the obligation to repay an $800,000 loan made by the General Petroleum Corporation of California to California Kettleman Oil Royalties, Inc., and other matters not necessary to specify here. The contract settled the questions as nearly as it was possible to do so without the consent of Dougherty, who was not a party to it. The net result important here is that the estate and California Kettleman Oil Royalties, Inc., determined the interest of each in the royalties and money accrued from them, and apportioned the indebtedness to the General Petroleum Corporation of California. We will hereafter refer to this as the first contract.

Having settled the controversies with the Universal Oil Land Company and California Kettleman Oil Royalties, Inc.,

the administratrix proceeded to settle with Dougherty. By a contract dated December 5, 1936, and while the appeal in *Dougherty* v. *California Kettleman Oil Royalties, Inc.*, 9 Cal. (2d) 58 [69 Pac. (2d) 155], was still pending, Hilda Carling Hinckley, as administratrix of the estate of Washington H. Ochsner, deceased, as first party, entered into a contract with F. C. Dougherty, as second party, which settled their differences and which divided between them the oil royalties and money accumulated from them. We will refer to this as the second contract.

Paragraph six of the first contract reads as follows:

"In a certain action commenced in the Superior Court of the State of California in and for the City and County of San Francisco, entitled, '*F. C. Dougherty, Plaintiff*, v. *California Kettleman Oil Royalties, Inc., Defendant*,' and numbered therein 152,210, plaintiff therein recovered a judgment against Third Party on or about the 25th day of June, 1935. Said judgment has been appealed by Third Party to the Supreme Court of the State of California. If it shall be finally held, as a result of said appeal or as a result of any further proceedings in said action, that F. C. Dougherty is entitled to a certain percentage of the 'A' and 'B' royalties hereinabove referred to, then First Party agrees that she will execute appropriate conveyances or assignments to said F. C. Dougherty of such percentage of the 'A' and 'B' royalties that he shall be so entitled to receive as the percentage of such royalties owned separately and apart by First Party, as herein provided, bears to the whole of said royalties; for example, if said F. C. Dougherty should be finally adjudged in said action to be entitled to receive 10% of said 'A' and 'B' royalties, First Party will convey 10% of 40.697536% of the 'A' royalties and 10% of 45.259264% of the 'B' royalties to him; provided, however, that First Party reserves the right to contest the application of any such holding or judgment to that portion of said 'A' and 'B' royalties which are and have been owned by First Party as provided in paragraph 1 of this agreement, and if she shall elect to make such contest she shall not be obliged to make such conveyance of any portion of said royalties owned by First Party as provided in said paragraph 1 but she shall not be entitled to withhold such conveyance unless she shall agree, by written agreement satisfactory in form to Third Party,

to save Third Party harmless from any liability to said plaintiff by reason of the withholding of a conveyance of said portion of said royalties."

Paragraph two of the second contract contains the following: "Second party (Dougherty) further agrees to indemnify and hold first party (Estate of Ochsner) harmless against all liability or obligation to Universal Oil Land Company and California Kettleman Oil Royalties, Inc., which first party assumed in and by the provisions of paragraph 6 of said agreement dated August 14, 1936, attached hereto as Exhibit 'A'."

Plaintiffs claim under their assignments and the two paragraphs of the two contracts just quoted. In this connection it should be observed that paragraph four of the second contract reads as follows:

"Neither this agreement nor any covenant herein, shall have any effect upon any litigation now pending between F. C. Dougherty, as plaintiff, and California Kettleman Oil Royalties, Inc., defendant."

We fail to comprehend how the plaintiffs or their assignors could hope to benefit by the two contracts from which we have quoted. After the judgment in the Dougherty case, the administratrix found herself confronted by a situation in which the estate would lose all interest in the oil royalties unless that judgment should be modified or reversed on appeal. She proceeded to extricate the estate from this situation by two moves. She first proceeded to settle with Universal Oil Land Company and California Kettleman Oil Royalties, Inc., so that the interest of the estate in the oil royalties and the money derived from them were settled and defined. In case of a reversal of the Dougherty judgment she would have had a definite interest in the subject matter of the litigation to defend. She next settled with Dougherty so that if his judgment was affirmed the estate would have a defined interest in the subject matter of the litigation and would not suffer a total defeat.

There is nothing in the first contract requiring the estate to convey anything to either Universal Oil Land Company or to California Kettleman Oil Royalties, Inc., in case Dougherty was either wholly or partly successful in his litigation. Paragraph six merely bound the estate to convey to Dougherty the estate's proportionate share of the subject

matter of the litigation in case Dougherty should finally prevail. This was merely a covenant on the part of the estate to carry out its obligations, whatever they might prove to be, under any judgment that Dougherty might obtain. Neither of the two corporations were to receive anything under this paragraph of the first contract. It follows that their assignees could not benefit from it.

It is equally clear that neither the two corporations nor the plaintiffs as their assignees gained any interest in the royalties under the quoted paragraphs of the second contract. The first quoted paragraph from that contract was merely a covenant of indemnity. It did not create any primary obligation on the part of either the estate or Dougherty to either Universal Oil Land Company or California Kettleman Oil Royalties, Inc. It did not give to either corporation any interest in the subject matter of the litigation that it did not then possess. As neither corporation had any interest in that property (*Dougherty* v. *California Kettleman Oil Royalties, Inc.,* 9 Cal. (2d) 58 [69 Pac. (2d) 155]), the contracts gave them none. As plaintiffs' assignors had no interest in the royalties or the money accumulated from them, the assignments conveyed no interest in them to plaintiffs and they cannot recover in this action.

As the Dougherty judgment was finally affirmed, any interest in the royalties which the Ochsner estate now has comes under the contract with Dougherty and not from anything reserved by Ochsner or obtained from the two corporations which were parties to the first contract and which were plaintiffs' assignors.

A similar question in a very different form was argued in *Dougherty* v. *California Kettleman Oil Royalties, Inc.,* 13 Cal. (2d) 174 [88 Pac (2d) 690], where the two contracts we have been considering were before the court. Shortly after the *remittitur* went down following the affirmance of the judgment (9 Cal. (2d) 58) the defendant moved for a satisfaction of the judgment against it based on the second contract, urging that the action was *ex delicto* and that payment by one tort feasor released the others. The Supreme Court rejected this theory holding that the action sounded in contract between Ochsner and Dougherty; that ''The transfer of the trust property to Universal and by it to appellant constituted clear breaches of the contractual duty

owed Dougherty, and the assignees took subject to the terms of that contract." (*Dougherty* v. *California Kettleman Oil Royalties, Inc.,* 13 Cal. (2d) 174.)

As plaintiffs' assignors had no interest in the subject matter of the litigation to assign to them, plaintiffs took nothing under those assignments. They cannot recover here so the demurrer to their amended complaint was properly sustained.

Judgments affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied December 29, 1941.