# United States Court of Appeals
## For the First Circuit

No. 02-2572

RONALD J. RANKIN; LIZ RANKIN,

Plaintiffs, Appellants,

v.

ALLSTATE INSURANCE CO.; CONCORD GENERAL MUTUAL INSURANCE CO.;
SI TRUCKING, INC.,

Defendants, Appellees.

_____

RIGHT-ON-TIME MOVING & STORAGE, INC.,

Defendant.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. Margaret J. Kravchuk, U.S. Magistrate Judge]

_____

Before

Boudin, Chief Judge,

Torruella and Lipez, Circuit Judges.

_____

Arthur J. Greif with whom Julie D. Farr and Gilbert & Greif,
P.A. were on brief for appellants.
James E. Fortin with whom Martica S. Douglas and Douglas,
Denham, Buccina & Ernst, P.A. were on brief for appellee Allstate
Insurance Co.

_____

July 14, 2003

_____

**BOUDIN**, **Chief Judge**.  This appeal concerns claims, complicated both factually and legally, arising from an ill-starred household move.  On June 16, 2000, Ronald and Liz Rankin contracted with Right-On-Time Moving & Storage, Inc. ("ROTMS") to transport their possessions from California to Maine.  ROTMS subcontracted with SI Trucking, Inc. ("SI") to handle most of the move.  The Rankins had homeowners insurance policies in force with Allstate Insurance Company ("Allstate") and Concord General Mutual Insurance Company ("Concord"), one covering the origin residence and one the destination.

ROTMS employees picked up the Rankins' possessions in California in June 2000 and brought them to a warehouse.  SI employees then transferred them to an SI truck for transportation and delivery.  When SI arrived at the Rankins' new home in Maine on July 24, 2000, the Rankins discovered that some of their possessions had been damaged and that many others were missing.  Upon delivery, the SI movers could not account for the damaged or missing items and became abusive and threatening toward the Rankins.

Shortly thereafter, the Rankins notified their insurer, Allstate, which hired an adjuster to determine what goods were damaged and their value.  In August 2000, the Rankins provided Allstate with a detailed list of lost or damaged items, supplemented with more information in September.  The task of

appraisal was substantial as the list comprised a large array of objects, including household goods, electronics, artwork, and furniture. In September, their attorney sent Allstate a demand letter.

The Allstate policy covered theft and damage to property in transit but, on Allstate's reading, did not cover items that were merely misplaced by the carrier. Allstate maintained in an October 2000 letter that the Rankins' missing goods were not covered by the policy because it was unclear whether they were stolen or merely misplaced in a carrier or warehouse. On December 19, 2000, the Rankins filed a police report about the missing goods, convinced by now that their property had in fact been stolen.

On January 23, 2001, Allstate sent a worksheet to the Rankins giving its appraisal of the damaged items, but making no mention of the larger number of stolen items. In the Rankins' view at the time, the damage to the items that were delivered amounted to about $24,000--of which Allstate's share was half.[1] On February 12, 2001, Allstate agreed to pay $6,000 to satisfy what it claimed was its share of the losses stemming from the damaged goods. The next day the Rankins gave Allstate an itemized account of their

---

[1]The Concord policy covered damage but not theft and all parties appear to agree that, as to damaged property, Allstate and Concord were each liable for half. Concord ultimately valued the losses from damage at around $24,000, and paid half of that amount to the Rankins in February 2002.

losses, calculating the total loss (damaged goods and stolen goods) at $97,583 (a figure the Rankins later raised to $106,000).

On March 2, 2001, the Rankins brought suit against ROTMS and Allstate in federal district court in Maine. The original complaint alleged inter alia that ROTMS had violated the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706 (2000), which imposes something close to strict liability upon originating and delivering carriers, and that Allstate had breached its contract with the Rankins by failing to provide the benefits due them under the insurance policy.

In June 2001, the Rankins added SI as a defendant, claiming against it under the Carmack Amendment and separately for intentional infliction of emotional distress based on the behavior of the employees who delivered the load and abused the Rankins. The same amendment added a claim against Allstate under Maine's Unfair Claims Settlement Practices Act ("UCSPA"), 24-A M.R.S.A. § 2436-A(1)(E) (2000), which imposes attorneys' fees and interest for an insurer's unreasonable failure to make timely settlement of insurance claims.

The magistrate judge empowered by consent to act as the district court, 28 U.S.C. § 636(c) (2000), permitted the addition of the new claims and defendants but deferred then-existing discovery deadlines. The Rankins and Allstate made obligatory disclosures and conducted some discovery. When SI failed to answer

-4-

the amended complaint, the Rankins in September 2001 sought and received entry of default against it. Fed. R. Civ. P. 55(a). On September 14, 2001, the court set a new discovery deadline of December 14, 2001.

In October 2001, all parties had an informal settlement conference. Allstate thereafter requested a copy of the police report filed by the Rankins in December 2000, which the Rankins then provided. Allstate did not depose the Rankins--it had their recorded statements--but Concord did take their deposition in December 2001. Allstate did depose ROTMS and also asked that its adjuster be allowed to contact the Rankins directly.

Shortly after the discovery deadline and not long before the scheduled trial date of February 11, 2002, Allstate, on December 19, 2001, sent a letter invoking an arbitration provision in the policy for resolving disputes as to the amount of loss or damage.[2] The Rankins rejected this demand as coming too late. Allstate then, on December 26, 2001, sent the Rankins a check for $38,500, as purported full payment for the theft claims--which the Rankins had estimated as approximately $82,000.

Allstate then sought summary judgment on the claims against it. The court granted the motion on March 25, 2002, as to

---

[2]The arbitration provision, limited to valuation disputes, provided for each side to appoint an appraiser and, if the two appraisers could not agree, to select an "umpire" whose decision would be final.

certain claims not pressed on this appeal but denied the motion as to the Rankins' contract and UCSPA claims with which we are now concerned. Trial was rescheduled for August 2002, and the parties were ordered to confer and provide further information to each other. In consequence, Allstate paid the Rankins two further sums (totaling a little over $25,000) on account of the theft claim in May and July 2002. This brought the total payments for theft to about $63,500--still about $19,000 short of the Rankins' final estimate.

On July 11, 2002, the court reconsidered sua sponte its denials of summary judgment, invited a new motion by Allstate, and deferred the trial again. On September 16, 2002, the court granted the motion for summary judgment, resolving both the contract claim and the UCSPA claim in favor of Allstate. Thereafter the court held a hearing on November 6, 2002, to determine SI's liability on the default and heard evidence from the Rankins as to the amount of their property losses and as to their emotional distress claims. The next day it awarded $150,000 on the latter but--on grounds described below--denied recovery on the former.

In the course of the litigation, the Rankins settled their disputes with ROTMS and Concord out of court. The Rankins have now appealed from the district court's dismissal of their contract and UCSPA claims against Allstate and the refusal of the district court to award damages on their property loss claim

-6-

against SI.  We consider the issues on appeal in the same order. On the grant of summary judgment, our review is <u>de novo</u>.  <u>Roche</u> v. <u>John Hancock Mut. Life Ins. Co.</u>, 81 F.3d 249, 253 (1st Cir. 1996). As to the ruling on the default judgment determination, the standard of review depends upon the basis for the ruling.

<u>Contract Claims</u>.  In a nutshell, the Rankins say that Allstate breached its insurance contract by failing to make timely payment for all covered losses; that Allstate's share of the losses is still not completely paid--a further breach of contract; and, finally, that Allstate cannot rely on the arbitration provision for two reasons: that Allstate itself breached the contract and that it failed to invoke the arbitration provision in a timely manner.

The magistrate judge concluded that the delays in payment were explainable in light of the changing nature of the Rankins' claims and various litigation-related events and that no reasonable jury could find otherwise.  As to the remaining gap between what Allstate paid and the Rankins' larger estimate of losses, the magistrate judge stated that "Allstate is entitled to invoke the contract provision requiring arbitration of any remaining disputes regarding the value of items stolen or damaged."

Whether Allstate unreasonably delayed payment of what was due, whether it stills owes money, and whether it lost its right to invoke the arbitration provision are three different questions, albeit set against the same background facts and intertwined with

each other (and with the Rankins' separate statutory claim based on unreasonable delay).

We start with the question whether Allstate unreasonably delayed making payment of what was (or still is) due to the Rankins. More precisely, the question is whether summary judgment should have been granted by the magistrate judge on that issue. Our conclusion is that the undue delay question presents a jury issue, assuming arguendo that there is a contractual obligation to act diligently. The reasons why the delay question could not be decided on summary judgment are more appropriately set forth in our later discussion of the statutory claim, where the answer clearly matters.

Quite likely the answer does not matter in the case of the contract claim. Whatever may still be due under the policy for direct losses (that is, for direct damage to or loss of insured goods) is due regardless of whether there has been delay. The Rankins have suggested only two reasons why delay itself may be pertinent to their contract claim: first, as a basis for consequential damages and second, as a basis for rejecting the arbitration demand. The first is doubtful and the second wrong.

There is only the barest hint that the Rankins are seriously seeking consequential damages, that is, damages not for the direct loss but in consequence of it. In his deposition, Ron Rankin indicated quite tersely that because his new house was awash

in damaged furnishings, he could not use it for some in-house meeting or demonstration relating to his work. Almost nothing about this is said in his appellate briefs and it strikes us as an improbable claim.

The Rankins have not briefed the question whether the policy permits liability for consequential damages; nor is it clear that such a claim would turn on undue delay; nor is it especially plausible that either the damage to furnishings or the delay in reimbursement prevented Rankin from conducting business from home. This has more the feel of a kitchen-sink claim than anything likely to be pursued on the remand that is otherwise required because of the statutory consequences of any undue delay.

The other reason why the Rankins say undue delay is relevant under the contract concerns the arbitration clause. Describing the delay as a "total" breach of contract by Allstate, as opposed to a partial breach, the Rankins say that the total breach prevents Allstate from taking advantage of any other provision of the contract, including the arbitration clause. Undue delay or not, we think that on the facts of this case no one could reasonably conclude that the delay is the kind of breach that would defeat the arbitration clause, if timely invoked (which is a different question).

Arbitration clauses are often invoked precisely because one side claims, and the other denies, that a contract has been

violated.  Some violations may be so broad and fundamental that they should prevent the wrongdoer from invoking the arbitration provision itself.  But for obvious reasons of doctrine and policy, this requires something more than a claim by one side that the other paid some of what was due a bit too slowly and is insisting on arbitration as to the rest under a provision explicitly designed to resolve disputes about value.  County of Middlesex v. Gevyn Constr. Corp., 450 F.2d 53, 56 (1st Cir. 1971), cert. denied, 405 U.S. 955 (1972); 15 Corbin on Contracts § 1443, at 388-89 (interim ed. 1962).

Whether the arbitration is defeated by Allstate's delay in invoking the clause is a different issue commonly addressed under the heading "waiver," here meaning forfeiture rather than intentional relinquishment.  The Rankins support their waiver argument by invoking a Maine insurance law provision requiring timely reservation of defenses by the insurer, 24-A M.R.S.A. § 2436-A(1)(D); but it is not clear whether this provision applies at all to an arbitration clause, and there is not much state law precedent as to the statute.

Yet an arbitration provision has to be invoked in a timely manner or the option is lost.  See, e.g., Menorah Ins. Co., Ltd. v. INX Reinsurance Corp., 72 F.3d 218, 221-22 (1st Cir. 1995); Saga Communications of New England v. Voornas, 756 A.2d  954, 959-61 (Me. 2000).  Under federal law, such a forfeiture is an issue

-10-

for the judge, <u>Menorah</u>, 72 F.3d at 220, and, pertinent fact findings by the judge aside (which would be reviewed for clear error), our review is plenary. <u>Id.</u> Where we are dealing with a forfeiture by inaction (as opposed to an explicit waiver), the components of waiver of an arbitration clause are undue delay and a modicum of prejudice to the other side. <u>Id.</u> at 221-22.[3]

In this instance, by February 2001 the parties were in disagreement not only about whether the missing items were covered at all--not an issue subject to arbitration--but also about the value of damaged items, value being the arbitrable issue. Yet Allstate neither invoked the arbitration clause at that time nor did it in its April 2001 answer to the complaint filed in March 2001. Nor did it assert its right to arbitrate value in June 2001 when the Rankins' final list of lost and damaged items and estimates was delivered and when the likelihood of theft was fairly obvious.

Ordinarily, arbitration is provided for the dispute, not some limited aspect of it, so the precedents tend to insist that an

---

[3]Although the parties do not discuss the question, arbitration-related issues in this case are probably governed by the Federal Arbitration Act, 9 U.S.C. § 1, <u>et seq.</u> (2000). If so, federal law would automatically govern waiver issues, <u>S & H Contractors</u> v. <u>A.J. Taft Coal Co.</u>, 906 F.2d 1507, 1514 (11th Cir. 1990), <u>cert. denied</u>, 498 U.S. 1026 (1991); <u>Saga</u>, 756 A.2d at 958-59, although there is no indication that Maine law differs as to the requirements for waiver. <u>See</u> <u>Design Dwellings, Inc.</u> v. <u>Labrecque</u>, No. Civ. A. RE-00-039, 2001 WL 1710593, at *1 (Me. Super. Apr. 5, 2001).

arbitration clause be invoked at the earliest opportunity. E.g., Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc., 50 F.3d 388, 391 (7th Cir. 1995). If arbitration is invoked in response to a lawsuit, this must be done early on in the case so resources are not needlessly deployed. E.g., Menorah, 72 F.3d at 221. Here, the situation is somewhat different: the arbitration clause applies only to disputes about value and not to other questions, including in this case whether certain of the goods were stolen and so covered at all.

Even so, it is still hard to see why arbitration was not demanded once the suit had been brought and the Rankins' estimated losses had been firmed up in June 2001. Admittedly some, perhaps most, of the disagreements as to value concerned items as to which coverage was still disputed--although it is not easy to understand why theft was doubtful by June 2001. Still, discovery in the suit was open until December 2001, the delays being no apparent fault of Allstate and owing something to the Rankins' addition of new claims and defendants in June 2001.

It is true that discovery could narrow the arbitrable issues or even produce a settlement, and sometimes arbitrating as to value might make no sense until after discovery or even after trial (e.g., if liability itself could only be determined at trial). Yet our concern here is with when a timely demand for arbitration must be made, not when the arbitration itself occurs.

-12-

And knowing early on, or at least after suit is brought what procedures are to be followed--specifically, whether arbitration is sought as to arbitrable issues--is a condition of efficient planning by the court and in protecting the opponent against prejudice.

We need not fashion some mechanical rule embracing all possible cases. It is sufficient here that by waiting until after discovery had closed and the long-scheduled trial date had almost arrived, Allstate did unduly delay in invoking the arbitration clause in this case. Certainly by June 2001, Allstate ought to have known that theft coverage was likely to apply and that it would dispute some of the theft claims as to value, the Rankins having asserted these claims throughout and given their own dollar figures as early as February 2001.

But was there any prejudice from the delay? The Rankins say that they told Allstate in September 2000, after Allstate's appraiser had a chance to examine the property, that they (the Rankins) planned to dispose of broken or damaged items, which they then did. Now, they say they have been prejudiced because-- arbitration having been belatedly demanded--they have nothing (beyond photographs) to show the experts who act as appraisers under the policy. Allstate does not deny the allegation or otherwise respond to the waiver argument.

The absence of the damaged items themselves does not help the Rankins very much. The Rankins cannot have supposed that Allstate was conceding value and, seemingly, the now disposed of property would have been as useful (or useless) in a jury trial as in arbitration. A better argument, at least hinted at, is that there is prejudice inherent in wasted trial preparation when an arbitration demand is made, and effectively granted, after many months of delay and only six weeks before a long-scheduled trial.

In our view, this is enough in this case. The prejudice showing required is tame at best, Menorah, 72 F.3d at 222, and Allstate's failure to address the issue in its brief is itself a kind of waiver. Brandt v. Wand Partners, 242 F.3d 6, 17 (1st Cir. 2001). If there were no hint of prejudice, that would be a different matter. But as the case stands, we think that Allstate has forfeited its right to arbitration and that value disputes should be tried in court, along with the statutory claim to which we now turn.[4]

_____

[4]In the alternative, Allstate says that it is entitled to summary judgment on the contract claim because the Rankins failed to present any evidence regarding the value of their possessions at the summary judgment stage and thus did not meet their burden of proof. However, the Rankins gave their own estimates of their property's value, and owner valuation is sufficient to show damages. Fredette v. Allied Van Lines, Inc., 66 F.3d 369, 372-73 (1st Cir. 1995); Glidden v. Belden, 684 A.2d 1306, 1320 (Me. 1996). Allstate also apparently failed to raise the issue before the magistrate judge. Daigle v. Me. Med. Ctr., Inc., 14 F.3d 684, 687 (1st Cir. 1994).

The Statutory Claim. This claim, understandably, is a major focus of Allstate's attention. The difference between Allstate and the Rankins in valuation of damaged and stolen property is fairly limited (about $25,000). By contrast, if Allstate violated its duty under the UCSPA to make timely payment, it is liable for attorneys' fees and prejudgment interest. To state our conclusion at the outset, we think that the question whether Allstate complied with its duty of prompt settlement under the statute is complicated, arguably close, and (alas) not subject to resolution on summary judgment.

The Maine statute says that an insured is entitled to reasonable attorneys' fees and prejudgment interest (one and a half percent interest per month on damages) if the insurer, "[w]ithout just cause," fails to "effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear." 24-A M.R.S.A. § 2436-A(1)(E). The statute thus has two conditions and is narrowly construed, Marquis v. Farm Family Mut. Ins. Co., 628 A.2d 644, 651 (Me. 1993); but seemingly the insurer (absent good cause) must pay claims clearly due even though other claims from the same incident are open to dispute, Curtis v. Allstate Ins. Co., 787 A.2d 760, 768-69 (Me. 2002), and whether or not there is pending litigation. County Forest Prods., Inc. v. Green Mountain Agency, Inc., 758 A.2d 59, 68 n.4 (Me. 2000).

Here, by February 2001, Allstate knew that the listed property had been undelivered for more than six months and that the Rankins were claiming that it had been stolen. Perhaps it did not know that the Rankins had filed a police report in December 2000, a condition of a theft claim under the policy; but if this were the concern, Allstate could easily have objected on this ground and would have been given a copy of the report, as it was later when it requested a copy. Allstate apparently offered no such objection.

Allstate had no obligation to take the Rankins' word as to whether the property had been stolen, what items were still missing or what the items were worth. As to the first, it could have contacted the carriers and the police; as to the second, the Rankins were there to be interrogated (and several recorded statements were taken); and as to the third, the arbitration provision could have been invoked. But under the statute, Allstate did have a duty to investigate, cf. Masters v. Allstate Ins. Co., No. 99-37-B, 1999 WL 33117068, at *2 (D. Me. Sept. 20, 1999), and not just wait to be sued--unless it wanted to face claims under UCSPA.

The magistrate judge--whose reasoning is heavily relied upon by Allstate--said this in substance: that matters were uncertain until early 2001 and once litigation had begun in March 2001, discovery rules prevented Allstate from engaging in discovery until the court ordered or the parties so agreed, Fed. R. Civ. P.

26(d); that when the "discovery window" opened on May 7, 2001, with an order by the court, it was closed again in mid-June by the court due to the Rankins' own addition of new claims and defendants and did not reopen until a new order in mid-September 2001, setting a three month discovery schedule.

At that point, Allstate did ask for the earlier police report made by the Rankins in December 2000, conducted a deposition of an ROTMS employee in November 2001, and presumably took advantage of Concord's deposition of the Rankins in December 2001. On December 19, 2001, not long after discovery closed, Allstate paid the Rankins $38,510 on the theft claims (later payments followed in May and July 2002). It also invoked the arbitration clause as to the remaining claims.

As to the first payment, the magistrate judge said that three months from mid-September to mid-December was as a matter of law not an unreasonable delay. And, as to the subsequent payments, the magistrate judge said, given the complexity of the case, the failure of Allstate to "immediately pay all the money [the Rankins] demanded," was not a violation of the statute. This may mean that the magistrate judge deemed the amounts over and above the initial payment to be reasonably disputable until paid in the spring and summer of 2002, although the point is not discussed in detail.

We do not think that the magistrate judge's assessment is unreasonable, and we would likely defer if it were a mixed

-17-

finding of an issue properly committed to the magistrate judge. In re Howard, 996 F.2d 1320, 1327-28 (1st Cir. 1993). And admittedly, assessing what is reasonable behavior in the context of litigation rules and procedures is not the easiest task for a jury. But this assessment under the UCSPA, unlike the arbitration waiver question, is committed to the jury unless a reasonable jury could decide it only one way.[5]

The precedents today are far more favorable to summary judgment than they once were, e.g., Celotex Corp. v. Catrett, 477 U.S. 317, 321-23 (1986), and Maine courts do not lightly impose liability under UCSPA. Marquis, 628 A.2d at 651. Still, the Maine statute does not make litigation a blanket excuse for inaction by the insurer, County Forest, 758 A.2d at 68 n.4, nor did the magistrate judge say otherwise--and we think that a jury, even after being told how discovery rules limited Allstate, could--if the trial evidence matches the present record--take a different view of Allstate's behavior without being deemed irrational. This is so in two, and possibly three, respects.

First, admittedly, proof that the goods were likely stolen emerged only over the course of time. But with even modest

---

[5]Assuming the matter is fairly debatable, juries in federal court usually decide whether conduct was "reasonable," e.g., Thacker v. City of Columbus, 328 F.3d 244, 255 (6th Cir. 2003). Under the Seventh Amendment, it would not matter whether Maine courts gave such issues to the judge. Byrd v. Blue Ridge Rural Elec. Coop., Inc., 356 U.S. 525, 537-40 (1958).

investigation this arguably should have been clear to Allstate even before the suit was brought on March 2, 2001. Whatever the limitations on formal discovery during some of the period after suit, and whatever delay might have been caused by the Rankins' enlarging slightly their claimed loss in June 2001, a jury might well think based on the record before us that waiting until late December 2001 to pay theft claims for items of undisputed value was not reasonable.

Second, there is very little from Allstate, and nothing specific from the magistrate judge, to explain why the balance of the now <u>undisputed</u> claim (some disputed amounts still remain after all three payments) took until July 2002--some <u>two years</u> after the non-delivery. Perhaps there is some good reason for these subsequent delays; unduly hasty decisions by insurers to pay doubtful claims raise premiums for everyone. But to justify summary judgment, it was for Allstate to explain the reasons for this delay. We can find no explanation so far, although conceivably it could still be furnished at trial.

Third, it is also unclear what basis Allstate had for contesting the still disputed amounts ($25,000, of which $19,000 was due to stolen items). We assume that any legitimate doubt is a safe harbor under UCSPA and that other legitimate reasons for delay can be offered; but, in its reply brief, the Rankins say Allstate has never explained why it still disputes these amounts.

It is true that Allstate invoked the arbitration clause but, quite apart from what we have found is a waiver of arbitration, the question remains what basis Allstate had for disputing the figures, arbitrable or not.

On appeal, Allstate argues that its contractual obligation under the terms of its policy is to make payment within 60 days after the amount of the loss is "finally determined" (whatever this means) and that it was always within the control of the Rankins to invoke the arbitration provision to speed up the process. This argument is primarily presented in response to the contract claim, not the UCSPA claim and, however the 60-day language is read, it is open to serious doubt whether it overrides UCSPA obligations--a question of Maine law which we need not decide.

It is enough for the present that, at least as applied to the UCSPA claim, the argument based on the policy language is so little developed that we have no occasion to pass upon it. Brandt, 242 F.3d at 17. Further, according to the Rankins, Allstate never made this argument in the district court; and, if so, it could not be made here even if it were developed since new legal arguments cannot be debuted on the appeal. Daigle, 14 F.3d at 687. And, if not made before the appeal, it is almost certainly no longer available even on remand.

SI's Liability. The Rankins sued both ROTMS and SI under the Carmack Amendment. That statute provides a federal private right of action to obtain actual damages under the bill of lading for property "loss or injury" caused by carriers transporting goods in interstate commerce. 49 U.S.C. § 14706(a)(1). It embraces both the originating and the destination carrier. Id. With irrelevant exceptions, liability is without fault, PNH Corp. v. Hullquist Corp., 843 F.2d 586, 588-89 (1st Cir. 1988), but subject to limitation as to amount where the contract so provides in exchange for a reduced transportation rate. 49 U.S.C. § 14706(c)(1)(A).

The claim against ROTMS was proceeding toward eventual trial when the Rankins and ROTMS reached a settlement. Because SI never entered an appearance or filed an answer in the lower court, a default was entered against it on September 17, 2001. Fed. R. Civ. P. 55(a). Pursuant to Rule 55(b)(2), a hearing for damages was scheduled on November 5, 2002, at which time the Rankins gave evidence as to the extent of their losses. Following the hearing, the magistrate judge determined that damages for property damage and loss under the statute could not be awarded against SI. Her full discussion of the Carmack Amendment claim (count I) is as follows:

> Count I seeks relief against Right-on-Time Moving and Storage, Inc. as a carrier subject to the Interstate Commerce Act. SI Trucking's liability under this

-21-

count, as the subcontractor, would necessarily be co-extensive with Right-on-Time's. I cannot grant the Rankins greater relief than their complaint seeks. The Rankins have not alleged a separate breach of contract claim against SI Trucking nor a separate tort claim for damage to personal property nor does Count I seek any relief against SI Trucking beyond the relief obtained against Right-On-Time. The Rankins did not present any evidence of the extent of SI Trucking's liability under the Interstate Commerce Act and therefore I decline to enter judgment in any monetary amount on Count I and direct that Count I is DISMISSED as the plaintiffs have not presented sufficient evidence to establish the amount of SI Trucking's statutory liability pursuant to 49 U.S.C. § 14706.

The Rankins argue on appeal that ROTMS's liability is immaterial to SI's liability and that they (the Rankins) did present evidence of SI's liability and the extent of damages. SI has not entered an appearance, so there is no one to explain and defend the ruling of the magistrate judge. We must do the best we can, adjusting the standard of review--de novo, abuse of discretion, and so on--to the underlying issues presented by the ruling.

It is clear from count I that both ROTMS and SI were sued as "carriers" subject to the Carmack Amendment and, from the incorporated prior factual assertions in the complaint, that one was the originating and the other the destination carrier of goods damaged or stolen in transit. Broadly speaking, the magistrate judge is right that ordinarily liability of the two carriers would be co-extensive (not because SI was a subcontractor but because the

-22-

statute makes the two carriers each fully liable)--a liability understood, in the jargon of the common law, to be joint and several. Pizzo v. Bekin Van Lines Co., 258 F.3d 629, 634 (7th Cir. 2001).

Thus it is hard to understand what the magistrate judge meant in saying that "[t]he Rankins have not alleged a separate breach of contract claim against SI nor a separate tort claim for damage to personal property . . . ." The Carmack Amendment effectively creates a federal statutory remedy on the bill of lading against both the originating and destination carrier, and the complaint is clear that the Rankins were seeking this remedy against SI as well as ROTMS. Whether one thinks of the claim against the destination carrier as contract, tort, or just a product of the statute, count I does assert a claim against SI.

Admittedly, liability is likely to be co-extensive if each carrier asserts the same defenses and faces and presents the same evidence; and ROTMS argued that its liability was not for the full value of the lost or damaged goods because it had limited its liability to 60 cents per pound, as the Carmack Amendment permits subject to certain procedures. Hollingsworth & Vose Co. v. A-P-A Transp. Corp., 158 F.3d 617, 618-21 (1st Cir. 1998). But the magistrate judge had earlier refused to grant ROTMS summary judgment even on this limited liability issue (because it was not clear that the Rankins had consented to the limitation). And that

-23-

defense--which is only a limitation on the amount--was never adjudicated because ROTMS settled thereafter with the Rankins.

In a few states, a settlement with one joint tortfeasor releases the other, e.g., Dougherty v. Cal. Kettleman Oil Royalties, Inc., 88 P.2d 690, 693 (Cal. 1939), but the predominant "modern" rule is that release of one joint tortfeasor does not release another. See Restatement (Second) Judgments § 50, cmt. a, illus. 1 (1982). Of course, anything paid by ROTMS for stolen property or damage should reduce SI's liability for property loss or damage--collateral source issues aside, one cannot collect twice for the same injury, id. at illus. 1--but there is no indication that ROTMS paid in settlement all of the approximately $105,000 that the Rankins apparently claim.

Did then the magistrate judge mean that the Rankins had simply failed to offer evidence as to damages? This seems unlikely, despite one reference to a supposed failure of the Rankins to present "sufficient evidence to establish the amount" of SI's liability. The reason why this is unlikely is that the Rankins plausibly represent that in substance they offered their own testimony at the hearing as to what was damaged or missing and provided their estimates of worth, together with photographs of damaged items. Such evidence is ordinarily competent, even without expert testimony. See note 4, above.

Through a mechanical malfunction, the default judgment hearing was not recorded.  However, the Rankins properly presented a statement of their evidence for the approval of the magistrate judge, which was given.  Fed. R. App. P. 10(c).  This comprised the lists of property and loss estimates, copies of the photographs, and the representation that Ron Rankin had testified that the lists contained accurate statements of what was damaged or missing and his best estimate of the value of lost items and the dollar value of the damage.  If the magistrate judge thought that the Rankins' evidence was defective, neither this conclusion nor the grounds for it have been explicitly set forth.

Accordingly, we are bound to remand the count I claim against SI for further proceedings.  Of course, even if liability is clear--and we do not foreclose some further explanation of why it is not--the magistrate judge is not bound to accept the Rankins' own estimates, which Allstate itself apparently contests; but that would reduce rather than eliminate SI's liability.  If the same issues are to be tried against Allstate, nothing prevents the magistrate judge from deferring a decision on SI's liability until that proceeding is complete.

This is a peculiar case.  Although the Rankins have been largely successful on this appeal, it is far from plain that the Rankins' estimates, as opposed to Allstate's, will necessarily prevail at trial and equally unclear that Allstate is liable for

unreasonable delay under the statute--let alone for consequential damages:  we have said only that the delay issue is not quite suitable for summary judgment on this record.  Given these uncertainties, we urge again--as we did at oral argument--that the Rankins and Allstate consider anew the possibility of settlement.

The judgment of the district court insofar as it dismissed or denied the contract and statutory claims against Allstate and the Carmack Amendment claim against SI Trucking is vacated and the matter remanded for further proceedings consistent with this decision.

It is so ordered.